706 F.2d 940
 Thelma YAMAGUCHI, individually and as Personal
Representative of the Estate of Stanley Yamaguchi, deceased;
and Robin Yamaguchi, minor, and Lynne Yamaguchi, minor, by
Thelma Yamaguchi, their Guardian Prochein Ami, Plaintiffs-Appellees,
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, an Illinois
corporation, Defendant-Appellant.
 No. 81-4107.
 United States Court of Appeals,
Ninth Circuit.
 Submitted Aug. 10, 1982.
Decided May 24, 1983.
 
 Henry N. Kitamura, Roy Chang, Honolulu, Hawaii, for plaintiffs-appellees.
 Ronald Y.K. Leong, Kobayashi, Watanabe, Sugita & Kawashima, Honolulu, Hawaii, for defendant-appellant.
 Appeal from the United States District Court for the District of Hawaii.
 Before SCHROEDER, FLETCHER, and NORRIS, Circuit Judges.
 FLETCHER, Circuit Judge:
 
 
 1
 This is a diversity action against an insurer to recover no-fault benefits under two Hawaii no-fault insurance policies. Defendant appeals from the trial court's granting of plaintiffs' motion for partial summary judgment of $100,000 against the defendant. 515 F.Supp. 186 (D.Haw.1981). The trial court ordered State Farm Mutual Automobile Insurance Co. (State Farm) to pay plaintiffs the $100,000 in total no-fault benefits available under two Hawaii no-fault insurance policies, each of which has an aggregate limit of coverage of $50,000. Defendant appeals on the ground that the trial court misconstrued both the provisions of the Hawaii no-fault insurance statute, Haw.Rev.Stat. Secs. 294-1 to 294-41 (1976 and 1981 Supp.) (Chapter 294), and the terms of the applicable no-fault insurance policies. We note jurisdiction under 28 U.S.C. Sec. 1291 (1976)[1] and reverse in part and affirm in part.
 
 FACTS
 
 2
 On May 26, 1978, Stanley Yamaguchi (Yamaguchi) died as the result of an accident in Hawaii involving a 1972 Dodge station wagon in which he was a passenger. At the time of the accident, Yamaguchi was 44 years old and was employed by United Airlines at a salary of $2,854.00 a month. At the time of his death his lifetime earnings were expected to exceed substantially $115,000.
 
 
 3
 The station wagon in which Yamaguchi was killed was covered by a Hawaii no-fault insurance policy issued by National Union Fire Insurance Co. (National Union). The National Union policy had a limit of aggregate no-fault benefits of $15,000. On August 8, 1978, Thelma Yamaguchi, the surviving spouse and personal representative of the estate of Yamaguchi, received a payment of $15,000 from National Union, designated for survivors' loss.
 
 
 4
 At the time of the accident, Yamaguchi himself owned two cars, a 1971 Volkswagen and a 1970 Camaro, and two separate Hawaii no-fault insurance policies covering those cars. Each policy had been issued by State Farm and declared Yamaguchi as the "named insured." Yamaguchi paid separate premiums on each policy.
 
 
 5
 Each of the two State Farm policies provides that:
 
 
 6
 The company will pay, in accordance with the Hawaii no-fault law, no-fault benefits on account of accidental harm sustained by an eligible injured person and caused by an accident arising out of the operation, maintenance, or use of a motor vehicle as a vehicle.
 
 
 7
 Each policy defines "accidental harm" to include "death ... caused by a motor vehicle accident to a person while in ... a motor vehicle" and "eligible injured person" to include "the named insured." Each policy provides that "[n]o fault benefits shall consist of and be defined as": "(a) Medical Expenses," "(b) Rehabilitation Expenses," "(c) Work Loss," "(d) Substitute Services Expenses," "(e) Funeral Expenses," "(f) Survivors' Loss," "(g) Attorney's Fees and Costs," and "(h) Other Appropriate and Reasonable Expenses necessarily incurred as a result of accidental harm."[2] Each policy states that:[r]egardless of the number of persons insured, policies or self-insurance applicable, claims made or insured motor vehicles to which this coverage applies, the company's liability for all no-fault benefits to or on behalf of any one eligible injured person who sustains accidental harm in any one motor vehicle accident shall be $15,000 in the aggregate.
 
 
 8
 As endorsed, the aggregate limit of each State Farm policy is increased from $15,000 to $50,000. Each policy further limits certain types of no-fault benefits--including work loss, survivor's loss, funeral expenses, and substitute services expenses--to certain dollar amounts.
 
 
 9
 Thelma Yamaguchi sued State Farm to recover no-fault benefits for herself, her children, and the insured's estate[3] under the two State Farm policies, based on the loss of lifetime earnings of Yamaguchi. In the district court, Thelma Yamaguchi moved for partial summary judgment on her claim for $100,000 in no-fault benefits. State Farm countered with a cross-motion for partial summary judgment, asserting several reasons why Thelma Yamaguchi was not entitled to recover under the State Farm policies: (1) that Hawaii insurance law prohibits recovery of no-fault benefits under more than one insurance policy; (2) that Hawaii law prohibits the recovery of no-fault benefits in excess of $15,000 in the event of the death of the injured person; (3) that each State Farm policy limits the total recovery of no-fault benefits by the estate and survivors of a fatally injured insured person to $15,000; and (4) that recovery under the State Farm policies was limited by the terms of the policies to the difference between the benefits of the policy with the greatest no-fault benefits ($50,000) and the benefits under the primary policy ($15,000), or $35,000.
 
 
 10
 The district court rejected all of these arguments. It held that under Hawaii law Thelma Yamaguchi was entitled to recover no-fault work loss benefits under each State Farm policy in the amount of the aggregate limits of each policy. The trial court ordered recovery against State Farm in the amount of $100,000, the sum of the aggregate no-fault benefit limits of the two State Farm policies.
 
 DISCUSSION
 
 11
 Defendant challenges the district court judgment on two grounds. First, State Farm claims that the Hawaii no-fault insurance statute limits the combined recovery of no-fault benefits under all applicable Hawaii no-fault insurance policies to $15,000. It argues that the Hawaii no-fault insurance law both prohibits the recovery of no-fault benefits under more than one insurance policy and in any case limits the total recovery under all applicable insurance policies by the estate and survivors of a person who dies as the result of a motor vehicle accident to $15,000. Second, State Farm contends that, even if Hawaii no-fault insurance law does not impose the $15,000 limitation, the terms of Yamaguchi's two State Farm policies do. State Farm argues that the policies limit the total recovery of no-fault benefits by the estate and survivors of a person who dies as the result of a motor vehicle accident to $15,000, or, at least, limit further recovery to $35,000, the difference between the aggregate limit of $50,000 under the State Farm policies and the $15,000 recovered from the primary insurer. We agree with State Farm's last contention and accordingly reduce the trial court's judgment against State Farm from $100,000 to $35,000.
 
 
 12
 I. Limitations on Recovery Under Hawaii Law.
 
 
 13
 State Farm first contends that the Hawaii no-fault insurance statute prevents "policy stacking"--the recovery of no-fault benefits under more than one insurance policy.[4] It further asserts that the statute limits the no-fault benefits in the case of death to $15,000.[5]
 
 
 14
 A. Prohibition Against "Policy Stacking."
 
 
 15
 Neither State Farm policy by its terms denies benefits whenever benefits are available under another policy applicable to the same accident.[6] State Farm contends, however, that the Hawaii statute prohibits an injured person from recovering benefits under a policy other than the policy covering the automobile he occupied at the time of the accident. It claims this to be so even where another, or secondary, policy by its own terms purports to allow such benefits. Under State Farm's interpretation of Chapter 294, an injured person is permitted to collect no-fault benefits from a policy other than a policy covering the occupied vehicle only when the occupied vehicle is not itself covered by a no-fault insurance policy.
 
 
 16
 To support its construction of Chapter 294, State Farm points to two provisions of section 294-5, the section of the Hawaii no-fault statute entitled "Payment from which insurer." Upon analysis, we conclude that neither of these provisions prohibits "policy stacking."[7]
 
 
 17
 1. Limitation of Section 294-5(c).
 
 
 18
 Section 294-5(c) states that "[n]o payment of no-fault benefits may be made to the occupants of a motor vehicle other than the insured motor vehicle." An "insured motor vehicle" is elsewhere defined to mean "a motor vehicle ... [w]hich is insured under a no-fault policy." State Farm contends that section 294-5(c) prohibits any no-fault insurance recovery by a passenger involved in an automobile accident except under the policy that covers the car he occupied when the accident occurred. Under this reading of section 294-5(c), Yamaguchi would be unable to recover from State Farm because his 1971 Volkswagen and 1970 Camaro were the "insured motor vehicles" covered by the State Farm policies, and Yamaguchi was an "occupant" of neither at the time of the accident.
 
 
 19
 We disagree with State Farm's reading. Throughout Chapter 294, the Hawaii legislature used the distinct terms "owner," "driver," "occupant," "operator," "insured," and "user" to signify discrete legal capacities in which a person might collect insurance benefits.[8] Since words used in two or more sections of a statute are presumed to be used in the same sense throughout the statute, Rodrigues v. State, 52 Haw. 156, 168, 472 P.2d 509, 518 (1970), and since a statute ought to be construed to avoid making any word superfluous, In re City & County of Honolulu Corp. Counsel, 54 Haw. 356, 374, 507 P.2d 169, 178 (1973), the use of the specific term "occupant" in section 294-5(c) indicates that that section limits an injured person's no-fault recovery only in his capacity as an "occupant." Thus, we read section 294-5(c) merely to restrict the recovery of one injured in a motor vehicle accident, to the extent he seeks recovery as an occupant of an involved vehicle and under the policies covering the various vehicles involved in the accident, to recovery under the policy covering the car he in fact occupied (provided the occupied car has no-fault coverage). As an occupant of an involved vehicle, a claimant is limited to recovering those benefits available under any policy covering the occupied vehicle, even though other involved vehicles may be covered by no-fault policies that offer a superior range of benefits.
 
 
 20
 While limiting one's recovery as an "occupant," section 294-5(c) does not preclude an injured person from recovering no-fault benefits in other capacities, such as an "insured" party under a no-fault policy covering his own motor vehicle which he did not occupy at the time of the accident. Thus, in this case, where the appellees do not seek to recover from State Farm based on Yamaguchi's status as an "occupant," but rather claim under Yamaguchi's more general status as a person insured against any accidental harm under the terms of his own State Farm policy, section 294-5(c) does not preclude such recovery. In the absence of definite and precise language, we decline to find that section 294-5(c) prevents a person from insuring against accidental harm he suffers no matter what vehicle he happens to occupy at the time of the accident.[9] In fact we find it incredible in light of the statutory provisions discussed infra that the Hawaii legislature intended such a result.
 
 
 21
 2. Limitation of Section 294-5(d).
 
 
 22
 The second part of section 294-5 cited by State Farm to support its position is the final sentence of Section 294-5(d), which states that "[n]o person shall recover no-fault benefits from more than one insurer for accidental harm as a result of the same accident." Read literally, this sentence arguably supports State Farm's claim that "policy stacking" is prohibited under Hawaii law.
 
 
 23
 Viewed in conjunction with the rest of section 294-5(d),[10] however, the last sentence of section 294-5(d) is properly construed[11] not as an absolute ban on recovery of no-fault benefits under more than the primary insurance policy but rather as a prohibition against "benefit stacking." Section 294-5(d) does not prohibit an injured person from recovering additional no-fault benefits for uncompensated losses or expenses, for which no-fault benefits are not available or are inadequate under the policy covering the vehicle of occupancy.
 
 
 24
 Furthermore, if the last sentence of section 294-5(d) were to be read, as State Farm urges, i.e., to prevent recovery of no-fault benefits under more than one no-fault policy, the language of section 294-5(c) would be superfluous.[12] To avoid such superfluity, we conclude that the purpose[13] of section 294-5(d) is to prevent "benefit stacking," not "policy stacking."[14]
 
 
 25
 B. Limitations on Recovery of No-Fault Benefits in Excess of $15,000.
 
 
 26
 State Farm next contends that, even if Chapter 294 places no limitation on the number of no-fault insurance policies under which an eligible injured person (or his estate and survivors) may recover no-fault benefits, Hawaii no-fault insurance law limits the total recovery in case of death of the eligible insured person to $15,000. State Farm claims that Hawaii law limits the maximum no-fault recovery no matter what the applicable policies provide to $15,000 per person, per accident. It further contends that even if that limitation does not generally obtain, the statute does limit no-fault recovery in case of death of the eligible insured person to $15,000. We find neither argument persuasive.
 
 
 27
 1. Ceiling on No-Fault Benefits Recovery.
 
 
 28
 Haw.Rev.Stat. Sec. 294-2(10) provides in part that " '[n]o-fault benefits' with respect to any accidental harm shall be subject to an aggregate limit of $15,000 per person or his survivor."[15] Haw.Rev.Stat. Sec. 294-3(c) states:(c) "Maximum limit". The total no-fault benefits payable per person or on his death to his survivor on account of accidental harm sustained by him in any one motor vehicle accident shall be $15,000, regardless of the number of motor vehicles involved or policies applicable.
 
 
 29
 Both of these provisions appear on their face to limit the total no-fault benefits payable on account of accidental harm sustained in any one accident to $15,000. In light of another statutory provision, however, we conclude that the Hawaii legislature did not intend this construction.
 
 
 30
 Sections 294-2(10) and 294-3(c) must be read in conjunction with section 294-11(a)(3). See Hudson v. Uwekoolani, 65 Haw. 468, 471, 653 P.2d 783, 786 (1982) (per curiam); State v. Kaneakua, 61 Haw. 136, 140, 597 P.2d 590, 592 (1979); Pacific Insurance Co. v. Oregon Automobile Insurance Co., 53 Haw. 208, 212, 490 P.2d 899, 902 (1973). Hawaii Rev.Stat. Sec. 294-11(a)(3) provides in pertinent part as follows:
 
 
 31
 Required Optional Additional Insurance. (a) In addition to the no-fault coverages described in section 294-10 every insurer issuing a no-fault policy shall make available to the insured the following optional insurance under the following conditions:
 
 
 32
 * * *
 
 
 33
 * * *
 
 
 34
 (3) Additional coverages and benefits with respect to any injury, death, or any other loss from motor vehicle accidents or loss from operation of a motor vehicle. An insurer may provide for aggregate limits with respect to such additional coverage so long as the basic liability coverages provided are not less than those required by section 294-10(a)(1) and (2).
 
 
 35
 This section requires Hawaii no-fault insurers to offer to contract for optional no-fault insurance providing for no-fault benefits above the minimum $15,000 aggregate limit of no-fault benefits required of any Hawaii no-fault insurance policy by sections 294-4(1) and 294-2(10).[16]
 
 
 36
 If sections 294-2(10) and 294-3(c) were read, as State Farm urges, to establish an absolute $15,000 limit on recovery of no-fault benefits by any one eligible insured person in any one accident, then those sections would be inconsistent with Sec. 294-11(a)(3), since section 294-11(a)(3) would require an insurer to offer optional coverage for additional no-fault benefits while sections 294-2(10) and 294-3(c) would ban recovery of benefits afforded by the additional coverage. To avoid this inconsistency, we read sections 294-2(10) and 294-3(c) not to establish a maximum recovery limit for any one eligible insured person but rather to establish a maximum recovery of $15,000 where each applicable no-fault policy provides only the basic $15,000 in no-fault coverage. Mizoguchi v. State Farm Mutual Automobile Insurance Co., 663 P.2d 1071 (Haw.1983) ("statutory provisions regarding basic no-fault benefits set minimum, which the parties are allowed to exceed").
 
 
 37
 Our common-sense conclusion that sections 294-2(10) and 294-3(c) set no dollar limit on the recovery of no-fault benefits is bolstered by the legislative history of Chapter 294. First, the legislative statements accompanying the original enactment in 1973 of Chapter 294 suggest that Chapter 294 does not impose any limit on the total no-fault benefits recoverable by any one person in any one accident. Hawaii Sen.Conf.Comm.Rep. No. 4, 1973 Hawaii Sen.J. 636 (work loss benefits are to be paid "up to the standard or maximum limit of every no-fault policy" (emphasis added)); Hawaii H.Conf.Comm.Rep. No. 13, 1973 H.J. 1220 (same). Moreover, a 1977 committee report of the Hawaii Senate, which discusses the proper extent of insurer subrogation, shows that the Hawaii legislature did not believe that any provisions of Chapter 294 prohibited the recovery of no-fault benefits in excess of $15,000, but in fact contemplated that no-fault insurers would be required to pay "no-fault benefits in excess of $15,000" where an insured had contracted for "optional additional coverage" which "each insurer is required to offer each applicant." Hawaii Sen.Stand.Comm.Rep. No. 776, 1977 Hawaii Sen.J. 1184.[17] This legislative commentary indicates that the Hawaii legislature both considered section 294-11(a)(3) to require the offering of additional no-fault benefits and believed that Chapter 294 contains no legal prohibition on the provision of additional no-fault benefits in excess of the statutory minimum of $15,000. While a statement concerning an earlier statute by members of a subsequent legislature is of course not conclusive evidence of the meaning of the earlier statute, the later interpretation may be accorded some deference where the subsequent legislative commentary accompanies the enactment of an amendment to the earlier law. Application of Island Airlines, Inc., 47 Haw. 1, 87, 384 P.2d 536, 571 (1963); see Seatrain Shipbuilding Corp. v. Shell Oil Co., 444 U.S. 572, 596, 100 S.Ct. 800, 813-14, 63 L.Ed.2d 36 (1979); Oscar Mayer & Co. v. Evans, 441 U.S. 750, 758, 99 S.Ct. 2066, 2072-73, 60 L.Ed.2d 609 (1979). Since the 1977 amendments to Chapter 294 contained extensive revisions to a number of sections of the statute, including section 294-11(a)(3), the interpretation of the statute contained in the legislative history of the 1977 amendments may properly be considered in construing Chapter 294 and particularly section 294-11(a)(3).
 
 
 38
 The regulations issued by the Hawaii Motor Vehicle Insurance Division further indicate that Chapter 294 contains no dollar limitation on the recovery of no-fault benefits. In the interpretation of an Hawaii statute, we must give great deference to the interpretation given that statute by the state regulatory authority charged with its administration. Chun v. Employees' Retirement System, 61 Haw. 596, 600, 607 P.2d 415, 419 (1980); Keller v. Thompson, 56 Haw. 183, 190, 532 P.2d 664, 670 (1975). The Hawaii Motor Vehicle Insurance Division has issued regulations requiring each Hawaii no-fault insurer to offer two additional packages of no-fault benefits, each of which establishes aggregate no-fault benefit limits in excess of $15,000.[18] See Hawaii Motor Vehicle Insurance Division, Rules and Regulations 5 (1979). We thus conclude that Chapter 294 does not establish any dollar limitation on the recovery of no-fault benefits by any one person in any one accident.
 
 
 39
 2. Limitation on Recovery by Estate and Survivors.
 
 
 40
 State Farm also argues that, even if Hawaii no-fault insurance law places no dollar limitation on the recovery of no-fault benefits in general, the provisions of Chapter 294 limit the combined no-fault recovery of the estate and survivors of the insured person to $15,000. State Farm points out that subsection 1(B) of section 294-4, which describes the payment of no-fault benefits "[i]n the case of death of any person," includes a clause "subject[ing]" the amount of no-fault benefits payable "to the provisions of section 294-2(10)," whereas subsection 1(A) of section 294-4, which describes the payment of no-fault benefits in case of non-fatal injury, does not include such a clause. State Farm also notes that 294-2(10) states that " '[n]o-fault benefits' with respect to any accidental harm shall be subject to an aggregate limit of $15,000 per person or his survivor." The appellant concludes from this that Chapter 294 imposes a $15,000 limit on the no-fault benefits payable to the estate or survivors of a person who dies as a result of a motor vehicle accident. We find this argument unpersuasive.
 
 
 41
 Since the statutory obligation of State Farm to pay no-fault benefits in this case does not arise from section 294-4(1)(B) in the first place, any limitation accompanying the obligation that is created by section 294-4(1)(B) is irrelevant. Section 294-4(1) requires a no-fault insurer to pay no-fault benefits "in the case of death arising out of a motor vehicle accident of any person, including the owner, operator, occupant, or user of the insured motor vehicle ... who sustains accidental harm as a result of the operation, maintenance, or use of said vehicle " (emphasis added). Here, Yamaguchi sustained no accidental harm as a result of the operation, maintenance, or use of either the 1971 Volkswagen or the 1970 Camaro, the motor vehicles covered by the two State Farm policies. Yamaguchi was a named insured of the policies covering those vehicles but not an occupant of those vehicles at the time of the accident. Hence, section 294-4 imposes no obligation on State Farm to pay no-fault benefits to Yamaguchi's estate and survivors.
 
 
 42
 The obligation of State Farm to pay no-fault benefits arises not from section 294-4 but rather solely from section 294-11(a)(3), which obligates State Farm to provide optional additional coverages, and from the optional additional coverage provisions of the two State Farm insurance policies purchased by Yamaguchi. Thus, the right of Yamaguchi's estate and survivors to recover no-fault benefits from State Farm arises from Yamaguchi's contracts with State Farm and not from Yamaguchi's status as an occupant of either of the two motor vehicles. Consequently, since section 294-11(a)(3) contains no dollar limitation on the recovery of no-fault benefits that is specially applicable in the case of the death of the insured person or, for that matter, in any situation, we conclude that Hawaii insurance law imposes no dollar limitation on the amount of no-fault benefits that can be contracted to be paid to the estate and survivors of a fatally injured insured person.[19]
 
 
 43
 II. Limitations Under the Insurance Policy Provisions.
 
 
 44
 State Farm argues that, regardless of statutory limitations, the provisions of the two applicable no-fault insurance policies limit the recovery of Yamaguchi's estate and survivors to $15,000. State Farm further contends that in any event they prevent recovery in excess of the difference between the $50,000 aggregate limit of no-fault benefits contracted for under the State Farm policies and the $15,000 in no-fault benefits payable by National Union. Since each of State Farm's arguments is based solely on the interpretation of contract language, we review the district court's interpretation de novo on this appeal.[20] See Insurance Co. of North America v. Howard, 679 F.2d 147, 150 (9th Cir.1982).
 
 
 45
 A. Limitation of Subsection (d) of "Limits of Liability" Section.
 
 
 46
 The "Limits of Liability" section of each of Yamaguchi's State Farm policies provides in pertinent part that:
 
 
 47
 Regardless of the number of persons insured, policies or self-insurance applicable, claims made on insured motor vehicles to which this coverage applies, the company's liability for all no-fault benefits to or on behalf of any one eligible injured person who sustains accidental harm in any one motor vehicle accident shall be [$50,000, as endorsed] in the aggregate. Subject to such aggregate limit:
 
 
 48
 (a) the maximum amount payable for work loss shall not exceed the lesser of:
 
 
 49
 (1) $800 per month, or
 
 
 50
 (2) the monthly earnings for the period during which the accidental harm results in the inability of the eligible injured person to engage in available and appropriate gainful activity, reduced by the actual earnings of the eligible injured person for such month.
 
 
 51
 This monthly amount shall be pro-rated when the period of work loss is less than a month.
 
 
 52
 (b) the maximum amount payable for substitute services expenses shall not exceed $800 per month.
 
 
 53
 (c) the maximum amount payable for funeral expenses shall not exceed $1,500.
 
 
 54
 (d) the maximum amount payable for survivors' loss is $15,000 reduced by the amount of any other no-fault benefits paid or payable under this coverage.
 
 
 55
 State Farm contends that subsection (d) establishes a $15,000 limit on the aggregate total of all no-fault benefits payable to the estate and survivors of a person insured under the policy. The appellees argue that subsection (d) establishes a limit only for those no-fault benefits which constitute "survivors' loss" as defined in the policies. They claim that since the benefits claimed for work loss are not "survivors' loss" benefits, the limitation of subsection (d) of the "Limits of Liability" section of the policy is wholly inapplicable here. A careful examination of the State Farm policies convinces us that the district court correctly sustained the appellees' theory.
 
 
 56
 "Survivors' loss," as defined by subsection (f) of the policies,[21] is a form of no-fault benefits distinct from other types of benefits such as medical expenses, work loss, and funeral expenses. Contrary to State Farm's contention, the policies nowhere state that "survivors' loss" is the exclusive form of no-fault benefits payable to survivors. On the other hand, it is true that the policies do not specifically provide that the estate and survivors of an eligible insured person may recover these other forms of benefits. But two aspects of the language of the policies indicate that the policy provisions do not separately limit the total recovery available to survivors.
 
 
 57
 First, "survivors' loss," in those words, is listed as one of eight types of no-fault benefits in the "No-Fault Benefits" section of the policy. "Survivors' loss" is not described or listed separately as a category that includes all of the no-fault benefits payable in case of the death of the eligible insured person. The specific inclusion of "survivors' loss" in the list of definitional categories of no-fault benefits supports a conclusion that "survivors' loss" is but one category of no-fault benefits and does not include all benefits available to survivors.
 
 
 58
 Second, subsection (d) itself states that benefits payable as "survivors' loss" must be "reduced by the amount of any other no-fault benefits paid or payable under this coverage" (emphasis added). This phrasing implies that "survivors' loss" is a discrete type of no-fault benefits payable under each State Farm policy to compensate the dependent survivors of the eligible insured person for "appropriate and reasonable expenses necessarily incurred as a result of accidental harm," separate and distinct from other losses compensable under the other categories of benefits.[22] If "survivors' loss" were a category all-inclusive of the various no-fault benefits payable under the policy, the phrase "any other," which implies that "survivors' loss" is on the same conceptual level as such no-fault benefits as "medical benefits," "work loss," and "funeral expenses"--and not inclusive of those benefits--would be wholly inappropriate. Viewing survivors' loss as a distinct type of no-fault benefits, we see no reason why the $15,000 ceiling on "survivors' loss" benefits should in any way limit the amount of other types of benefits based on other actual losses that are recoverable.
 
 
 59
 The State of Hawaii follows the well-established rule that an insurance policy must be construed liberally in favor of the insured and that any ambiguities must be resolved against the insurer. Law v. Hawaiian Life Insurance Co., 51 Haw. 288, 292, 459 P.2d 195, 198 (1969); Masaki v. Columbia Casualty Co., 48 Haw. 136, 140-41, 395 P.2d 927, 929 (1964); see also Industrial Indemnity Co. v. Aetna Casualty and Surety Co., 465 F.2d 934, 936 (9th Cir.1972).[23] The State Farm insurance policies, read even most favorably for the defendant, are ambiguous as to whether a special limitation exists on the total no-fault benefits payable where the eligible insured person is fatally injured. Accordingly, we conclude that the term "survivors' loss" in the State Farm policies is a distinct category of no-fault benefits. The limitation clause of subsection (d) of the "Limits of Liability" section of the policies applies only to "survivors' loss" benefits[24] and does not limit the right of the appellees to recover for "work loss" under the policies.
 
 
 60
 B. Limitation on Overall Secondary Recovery.
 
 
 61
 State Farm also argues that paragraph 4 of the "Conditions" section of the two State Farm policies explicitly limits the total recovery of Yamaguchi's estate under both policies to $35,000. With this contention, we agree.
 
 The applicable paragraph provides that:
 
 62
 No eligible injured person shall recover duplicate benefits for the same elements of loss under this or any similar motor vehicle insurance, including self-insurance. Where two or more policies provide for the benefits payable hereunder, the policy describing the vehicle occupied by or which struck the injured person shall be primarily liable for the payment of benefits and no other policy shall apply except that such other policies shall apply as excess to the extent their respective aggregate limits exceed those of the primary policy. Subject to the foregoing, in the event an eligible injured person has other similar motor vehicle insurance, including self-insurance, available and applicable to the accident, the maximum recovery under all such insurance shall not exceed the amount which would have been payable under the provisions of the insurance providing the highest dollar limit, and the company shall not be liable for a greater proportion of any loss to which this coverage applies than the limit of liability hereunder bears to the sum of the applicable limit of liability of this coverage and such other insurance.
 
 
 63
 The National Union insurance policy covering the car Yamaguchi occupied at the time of his death is "the policy describing the vehicle occupied by ... the injured person." Hence, under each State Farm policy, National Union is "primarily liable for the payment of benefits," and the State Farm policies apply only "as excess to the extent their respective aggregate limits exceed those of the primary policy." Thus, benefits under each State Farm policy are payable only to the extent of $35,000, the difference between the $50,000 aggregate limit of each policy and the National Union policy aggregate limit of $15,000.
 
 
 64
 Pursuant to the third sentence of paragraph 4 of each State Farm policy, the "maximum recovery" under "all insurance" is the "amount which would have been payable under the provisions of the insurance providing the highest dollar limit." Since each State Farm insurance policy provides the highest dollar limit among the three applicable policies, $50,000 is the maximum amount recoverable. Since National Union, the "primary insurer," has already paid $15,000, State Farm owes the appellees[25] $35,000 in "work loss" no-fault benefits.
 
 CONCLUSION
 
 65
 In summary, we hold that Hawaii law places no limitation either on the number of policies under which the estate and survivors of an eligible insured person may recover no-fault benefits or on the total dollar recovery available under all applicable policies. Accordingly, the recovery by the estate and survivors of Yamaguchi from State Farm is governed by the applicable insurance contracts. Since the terms of the State Farm policies provide for liability of State Farm to the survivors of Yamaguchi in the total amount of $35,000, we hold that the recovery of the plaintiffs against State Farm should be reduced to $35,000.
 
 
 66
 The judgment of the district court is AFFIRMED in part and REVERSED in part.
 
 
 
 *
 Honorable Shiro Kashiwa, Judge of Court of Claims, sitting by designation
 
 
 [1]
 The trial court entered partial summary judgment on plaintiffs' first cause of action on December 23, 1980. Defendant's request on January 6, 1981 for a rule 54(b) certification of that judgment was continued, pending decision by plaintiffs as to whether to pursue the second cause of action. On February 17, 1981, the trial court entered a judgment for fees, costs, and interest and an order of discontinuance of the second cause of action, which was acceded to by both parties. All concerned treated the order of discontinuance as an order of dismissal of the second cause of action. In light of the prior partial summary judgment, the order of dismissal and judgment for fees, costs, and interest disposed of all of plaintiffs' claims for relief. A notice of appeal from that final decision was timely filed on February 23, 1981
 
 
 [2]
 The "No-Fault Benefits" section, identical in each State Farm policy, states in full:
 No-fault benefits shall consist of and be defined as:
 (a) Medical Expenses --All appropriate and reasonable expenses necessarily incurred for medical, hospital, surgical, professional nursing, dental, optometric, ambulance, prosthetic services, products and accommodations furnished, X-rays, and includes any nonmedical remedial care and treatment rendered in accordance with the teaching, faith or belief of any group which depends for healing upon spiritual means through prayer.
 (b) Rehabilitation Expenses --All appropriate and reasonable expenses necessarily incurred for psychiatric, physical and occupational therapy and rehabilitation.
 (c) Work Loss --Loss of monthly earnings resulting from the inability of the eligible injured person to engage in available and appropriate gainful activity or a decrease in earning capacity because of accidental harm.
 (d) Substitute Services Expenses --All appropriate and reasonable expenses necessarily incurred for essential services in lieu of those the eligible injured person would have performed not for income but for the benefit of himself or his family, had he not sustained accidental harm.
 (e) Funeral Expenses --All appropriate and reasonable expenses necessarily incurred for professional funeral services, including burial and cremation expenses.
 (f) Survivors' Loss --No-fault benefits payable as a result of the death of the eligible injured person for the benefit of dependent survivors. Such benefits may be paid immediately in a lump sum payment at the option of the beneficiary.
 (g) Attorney's Fees and Costs --A reasonable sum for attorney's fees based upon actual time expended and costs of settlement of suit, necessary to effect payment of any or all no-fault benefits found due under this coverage, unless a court determines that the claim was fraudulent, excessive or frivolous.
 (h) Other Appropriate and Reasonable Expenses necessarily incurred as a result of accidental harm.
 
 
 [3]
 Thelma Yamaguchi sues both (1) in her capacity as personal representative of Yamaguchi's estate and (2) in her capacity as dependent survivor and guardian of two minors, Robin and Lynne Yamaguchi, the dependent surviving children of Yamaguchi
 
 
 [4]
 The propriety of "benefit stacking," the recovery of duplicative benefits under two different policies for the same actual losses or expenses, is not an issue in this case. State Farm concedes that Yamaguchi's death has resulted in a loss of expected lifetime earnings of well over $115,000, the combined total of aggregate limits of the three no-fault insurance policies applicable to him
 
 
 [5]
 The trial court ruled that under the facts of this case, the Hawaii no-fault insurance statute places no limitations on the recovery of no-fault benefits under more than one Hawaii no-fault policy or on the size of that recovery. Ordinarily, we accord some deference to a district court's interpretation of the substantive law of the state in which the court sits. Insurance Co. of North Am. v. Howard, 679 F.2d 147, 150 (9th Cir.1982). However, since the trial judge in this case is from an outside jurisdiction sitting by designation in the local district court, we review his decision on Hawaii state law de novo on this appeal. Safeco Ins. Co. of Am. v. Guyton, 692 F.2d 551, 554 (9th Cir.1982)
 
 
 [6]
 Each policy states that State Farm will pay "no-fault benefits on account of accidental harm sustained by an eligible injured person and caused by an accident arising out of the operation, maintenance, or use of a motor vehicle" (italics deleted). An "eligible injured person" is "the named insured ... who sustains accidental harm arising out of the operation ... of ... any motor vehicle" (italics deleted). Under these policy provisions, Yamaguchi (or his estate and survivors) is entitled to recover for injuries sustained in any motor vehicle accident, regardless of whether at the time of the accident he occupied the vehicle covered by the State Farm policy and regardless of whether the vehicle he occupied was covered by another no-fault policy
 
 
 [7]
 State Farm also contends that Sec. 294-3(c) provides that an injured person may recover no-fault benefits under only one insurance policy. Section 294-3(c), as we read it, however, limits only the maximum dollar amount of no-fault recovery for any one accident where no optional additional coverage has been procured and not the number of policies from which one may recover in obtaining that maximum amount. In fact, use of the phrase "regardless of the number of policies applicable" in Sec. 294-3(c) is telling proof that the Hawaii legislature intended that more than one no-fault insurance policy could properly be applicable to any one person in any one accident
 
 
 [8]
 Section 294-5(c), for example, itself prohibits payment of no-fault benefits to the "operator or user of a motor vehicle engaging in criminal conduct which causes any loss" without barring recovery by the "occupants" of such a car. See also Haw.Rev.Stat. Sec. 294-6(a) (describing the elimination of the tort liability of the "owner, operator, or user" of a motor vehicle); Haw.Rev.Stat. Sec. 294-3(b) (conferring right to benefits in connection with accidents occurring outside state upon "[n]o-fault insureds ... and [t]he driver and other occupants of an insured vehicle"); Haw.Rev.Stat. Sec. 294-4(1)(A) (requiring no-fault insurer to contract to provide no-fault benefits to the "owner, operator, occupant, or user" of other insured motor vehicle for accidental harm resulting from "operation, maintenance, or use" of the insured motor vehicle)
 
 
 [9]
 As we read Sec. 294-4(1) and Sec. 294-3(a), an Hawaii no-fault insurer is required by Hawaii law to contract to provide no-fault benefits only to (1) any person--including the insured--who is injured or dies as a result of an accident involving the insured motor vehicle; and (2) the insured (or a member of the insured's household) where the person is injured or killed in a motor vehicle accident in which no involved motor vehicle is covered by a no-fault insurance policy. By the same token, however, no provision of Chapter 294 prevents a no-fault insurer from contracting to provide no-fault benefits beyond those required under Hawaii law, as State Farm did here
 
 
 [10]
 Haw.Rev.Stat. Sec. 294-5(d) states in full:
 d) The no-fault insurance applicable on a primary basis to accidental harm to which this chapter applies is the insurance on the vehicle occupied by the injured person at the time of the accident, or, if the injured person is a pedestrian (including a bicyclist), the insurance on the vehicle which caused accidental harm to such pedestrian (including a bicyclist).
 If there is no such insurance on such vehicle, any other no-fault insurance applicable to the injured person shall apply.
 No person shall recover no-fault benefits from more than one insurer for accidental harm as a result of the same accident.
 
 
 [11]
 One provision of a comprehensive statute should be read in the context of the other provisions of that statute and in the light of the general legislative scheme. Hudson v. Uwekoolani, 65 Haw. 468, 471, 653 P.2d 783, 786 (1982) (per curiam); State v. Kaneaukua, 61 Haw. 136, 140, 597 P.2d 590, 592 (1979); Pacific Ins. Co. v. Oregon Auto. Ins. Co., 53 Haw. 208, 212, 490 P.2d 899, 902 (1971). Hence, the last sentence of Sec. 294-5(d) must be read not in the abstract but in the context of the other sentences of Sec. 294-5(d)
 The first sentence of Sec. 294-5(d) states in pertinent part that "[t]he no-fault insurance applicable on a primary basis to accidental harm to which this chapter applies is the insurance on the vehicle occupied by the injured person at the time of the accident" (emphasis added). The inclusion of the phrase "on a primary basis"--as opposed to "exclusively" or some similar, clearly limitational language--indicates that Sec. 294-5(d) was intended to establish priorities rather than to limit recovery. It suggests that under some circumstances an injured person may recover no-fault benefits under other policies in addition to the policy covering the occupied vehicle (the primary policy).
 Likewise, the second sentence of Sec. 294-5(d) indicates that Sec. 294-5(d) is meant to serve only a prioritizing function. This sentence provides that "[i]f there is no [no-fault] insurance on [the vehicle occupied in the accident], any other no-fault insurance applicable to the injured person shall apply." This language does not limit the recovery to any policy that may cover the occupied vehicle. Rather, it means that where the car occupied by the injured person is not covered by no-fault insurance, the injured person may turn immediately to other applicable no-fault insurance policies for the recovery of no-fault benefits. Thus, all recovery--not just excess recovery above the limits of the policy covering the occupied vehicle--may be obtained under secondary policies where no policy covers the occupied vehicle.
 
 
 [12]
 Under State Farm's reading, Sec. 294-5(d), standing alone, would prevent an occupant of one involved vehicle from recovering benefits under a no-fault insurance policy covering any other involved vehicle. The first sentence would make the insurance covering the occupied vehicle "primarily" applicable. The last sentence would preclude any recovery based on other policies, and the second sentence would allow for an exception in the case where the occupied vehicle is not insured. Given this reading, there would be no need for Sec. 294-5(c) to declare that an "occupant" of a motor vehicle involved in an accident cannot recover under any insurance policy covering another vehicle involved in the accident
 State Farm's interpretation of Sec. 294-5(c) violates the accepted "cardinal rule of statutory construction" of Hawaii law that a "statute ought upon the whole be so construed that, if it can be prevented, no clause, sentence or word shall be superfluous, void, or insignificant." In re City & County of Honolulu Corp. Counsel, 54 Haw. 356, 374, 507 P.2d 169, 178 (1973). We must read Sec. 294-5(d) as preventing the recovery of duplicative benefits and Sec. 294-5(c) as preventing an injured person from recovering no-fault benefits in his capacity as an occupant of an involved vehicle under the policies of other involved vehicles in order to give meaning to each section and thereby to avoid either being superfluous.
 
 
 [13]
 The meager legislative history of Sec. 294-5(d) sheds no light on whether Sec. 294-5(d) is meant to ban both "benefit stacking" and "policy stacking" or only the former. When the Hawaii legislature added subsection 294-5(d) to Chapter 294 in 1974, it stated that the provision was "inserted to clarify the intent of the Bill" and to "make[ ] clear that the practice of stacking is not allowed." Hawaii Sen.Stand.Comm.Rep. No. 467, 1974 Haw.Sen.J. 940, 942. However, the report gives absolutely no indication of whether the legislature intended subsection 294-5(d) to ban merely the "stacking" of benefits under several policies or more comprehensively the "stacking" of recoveries under several applicable policies even where benefits are not duplicative
 Similarly, it is not at all clear whether the statement in the report accompanying the bill adding Sec. 294-5(d) to Chapter 294 that "whenever a motor vehicle accident occurs, each injured occupant or pedestrian looks only to the insurer of the involved motor vehicle, and not that of other vehicles" (emphasis added) describes the Hawaii legislature's intended purpose for Sec. 294-5(d) and hence indicates a ban on "policy stacking" or whether it merely explains the net effect of the amended Sec. 294-5, with both subsection (c) and subsection (d) in place, and thereby indicates a prohibition merely on the recovery of duplicative benefits and on the recovery by an injured person in a status of occupant under more than the policy covering the occupied vehicle. To avoid superfluity, we conclude that the second interpretation is correct.
 
 
 [14]
 While not dispositive of the issue on this appeal, cases interpreting Hawaii uninsured motorist insurance statute and the no-fault insurance statutes of other jurisdictions reach similar results. Both Hawaii courts, interpreting the Hawaii uninsured motorist law, e.g., Allstate Ins. Co. v. Morgan, 59 Haw. 44, 48-49, 575 P.2d 477, 480 (1978); Walton v. State Farm Mutual Auto. Ins. Co., 55 Haw. 326, 332, 518 P.2d 1399, 1403 (1974), and the courts of other states, interpreting the no-fault insurance statutes of those states, e.g., Wasche v. Milbank Mut. Ins. Co., 268 N.W.2d 913, 918 (Minn.1978); Esler v. United Serv. Auto. Ass'n., 273 S.C. 259, 255 S.E.2d 676, 679 (1979), have held that the applicable insurance laws do not prohibit the recovery of insurance benefits under more than one applicable policy in the absence of recovery of duplicative benefits and in the absence of an explicit statutory prohibition against "policy stacking."
 
 
 [15]
 Haw.Rev.Stat. Sec. 294-2(10) in its entirety provides as follows:
 Definitions. As used in this chapter:
 * * *
 (10) "No-fault benefits" with respect to any accidental harm shall be subject to an aggregate limit of $15,000 per person or his survivor and means
 (A) All appropriate and reasonable expenses necessarily incurred for medical, hospital, surgical, professional nursing, dental, optometric, ambulance, prosthetic services, products and accommodations furnished, x-ray and may include any non-medical remedial care and treatment rendered in accordance with the teachings, faith or belief of any group which depends for healing upon spiritual means through prayer;
 (B) All appropriate and reasonable expenses necessarily incurred for psychiatric, physical, and occupational therapy and rehabilitation;
 (C) Monthly earnings loss measured by an amount equal to the lesser of:
 (i) $800 per month, or
 (ii) The monthly earnings for the period during which the accidental harm results in the inability to engage in available and appropriate gainful activity.
 (D) All appropriate and reasonable expenses necessarily incurred as a result of such accidental harm, including, but not limited to, (i) expenses incurred in obtaining services in substitution of those that the injured or deceased person would have performed not for income but for the benefit of himself or his family up to $800 per month, (ii) funeral expenses not to exceed $1,500, and (iii) attorney's fees and costs to the extent provided in section 294-30(a);
 provided that the term, when applied to a no-fault policy issued at no cost under the provisions of section 294-24(b)(2), shall not include benefits under subparagraphs (A), (B), and (C) for any person receiving public assistance benefits.
 
 
 [16]
 Section 294-11(a)(3) does not explicitly indicate whether the required additional coverages and benefits include only liability coverages, as State Farm contends, or instead both no-fault and liability coverages. A careful examination of the statutory language persuades us that Sec. 294-11(a)(3) requires a no-fault insurer to offer additional no-fault benefits in addition to liability coverages
 First, Sec. 294-11(a)(3) specifically provides that the required additional coverages and benefits are "[i]n addition" to the no-fault coverages described in Sec. 294-10. Since the no-fault coverages described in Sec. 294-10 include by reference the no-fault benefits specified in Sec. 294-4, the additional coverages and benefits required under Sec. 294-11(a)(3) must include additional no-fault benefits if they are to stand "in addition" to the coverages described in Sec. 294-10.
 Second, throughout Chapter 294, the basic liability coverages that must be provided under a no-fault policy are always referred to as "coverages" and not as "benefits" whereas no-fault benefits are referred to either as "benefits" or as "coverages." Hence, the inclusion of the term "benefits"--as opposed to simply the term "coverages"--in Sec. 294-11(a)(3) implies that no-fault benefits are included in the required "[a]dditional coverages and benefits" an insurer must offer under Sec. 294-11(a)(3).
 Third, the second sentence of Sec. 294-11(a)(3) provides that an "insurer may provide for aggregate limits with respect to such additional coverage so long as the basic liability coverages provided" (emphasis added) meet the limits of Sec. 294-10(a)(1) and (2). The insertion of the modifier "liability" for the first time in Sec. 294-11(a)(3) at the end of that second sentence indicates that in the first sentence of Sec. 294-11(a)(3) the term "coverages and benefits" includes no-fault benefits in addition to merely "liability" coverages.
 
 
 [17]
 The relevant section of the report states in full:
 This Section [Haw.Rev.Stat. Sec. 294-7 (concerning right of insurer to subrogate against insured's common law tort recovery) ] is amended to clearly state the original intent of the Legislature when it passed the Hawaii No-Fault Law. Whenever any person effects a tort liability recovery for accidental harm, whether by suit or settlement, the no-fault insurer is entitled to subrogate fifty per cent of the no-fault benefits, up to the maximum limit specified by Section 294-3(c). That limit is in the amount of $15,000. Therefore, if the no-fault insurer paid no-fault benefits in excess of this $15,000 amount; the proper application of the present law as specified in Sections 294-2(10), 294-3, 294-4, and 294-10, Hawaii Revised Statutes, leaves no room for interpretation; but that the maximum amount that the no-fault insurer may subrogate is in the amount of fifty per cent of $15,000. The no-fault insurer cannot subrogate against the optional additional coverages, which by rules and regulations of the Commissioner of Motor Vehicle Insurance each insurer is required to offer each applicant.
 Hawaii Sen.Stand.Comm.Rep. No. 776, 1977 Hawaii Sen.J. 1184 (emphasis added).
 
 
 [18]
 The $50,000 aggregate limit of Yamaguchi's policies resulted from his decision to accept precisely the type of optional coverage envisioned by the regulation. The "P5" coverage contracted for by Yamaguchi was substantially the same as "Option 2" described in the Hawaii state regulations
 
 
 [19]
 Furthermore, our reading of the statute indicates that the inclusion of the limitation phrase at the end of subsection 1(B) of Sec. 294-4 was in any event not meant to impose a dollar limitation on the recovery of no-fault benefits by the estate and survivors of an injured person. Mizoguchi v. State Farm Mutual Automobile Insurance Co., 663 P.2d 1071 (Haw. 1983) (rejecting argument that Sec. 294-2(10) as incorporated by Sec. 294-4(1)(B) imposes maximum aggregate limit of $15,000 in all cases where accidental harm results in death). Rather it simply emphasizes that recovery of no-fault benefits in the case of the death of an insured--like that in the case of a non-fatal injury--is limited to appropriate and reasonable expenses and monthly earnings loss and does not include benefits on the order of life insurance that are unrelated to actual expenses and losses. See id. at 11 (recovery for work loss limited to "provable" amounts). Had the Hawaii legislature meant the limitation phrase at the end of subsection 1(B) of Sec. 294-4 to establish a special statutory dollar limitation on the recovery of no-fault benefits by the estate and survivors of an insured, the lawmakers could easily have provided it directly by the use of such a phrase as "subject, however, to an aggregate limit of $15,000 in combined no-fault benefits for the estate and survivors of any one deceased person," rather than in the tortuous manner State Farm suggests
 
 
 [20]
 Apart from contending that subsection (d) of the "Limits of Liability" section and Paragraph 4 of the "Conditions" section of each State Farm policy limit recovery in this case, State Farm does not challenge the district court's findings that Yamaguchi, by his death, suffered a loss of expected lifetime earnings of at least $115,000, 515 F.Supp. at 192, or that that loss, which constitutes a "loss of monthly earnings" resulting from Yamaguchi's "inability" to "engage in available and appropriate gainful activity ... because of accidental harm," is recoverable under the terms of State Farm policies and Hawaii no-fault insurance law, id. at 189-91. Cf. Hudson v. Uwekoolani, 65 Haw. 468, 472, 653 P.2d 783, 786 (1982) (per curiam) (loss of future earnings caused by death is a "basic no-fault benefit")
 
 
 [21]
 See supra note 2
 
 
 [22]
 Of course, where such other losses are present, the available "survivors' loss" benefits are reduced accordingly
 
 
 [23]
 State Farm claims that since the Motor Vehicle Insurance Division of the State of Hawaii--rather than State Farm itself--was the author of the State Farm's Hawaii no-fault policy, it should not be held responsible for any ambiguities in the policies. We find this contention meritless. First, in Funk v. Aetna Life Ins. Co., 95 F.2d 38, 41 (9th Cir.1938), cited by defendant in support of an exception to general rule in regard to insurance contract ambiguity where contractual provisions are drafted by a governmental authority, the policy provisions were "prescribed by statute" and "imposed by legislative enactment." Here, by contrast, the Hawaii legislature left the choice of provisions of a Hawaii no-fault insurance policy to the individual insurer, while the Hawaii Motor Vehicle Insurance Division, an administrative body, merely issued suggested provisions. State Farm nowhere demonstrates that it made any attempt to alter the language suggested by the Hawaii insurance division or that, if State Farm had altered the language, the agency would have found the language unacceptable. Hence, in this case, State Farm must be held responsible for the ambiguous language as written and as used in its insurance contracts, regardless of the origin of the ambiguous language
 
 
 [24]
 If State Farm had intended otherwise, it could easily have removed any ambiguity and clarified the policy by (1) deleting subsection (f) of the No-Fault Benefits section of the policies and subsection (d) of the "Limits of Liability" section of the policies; (2) adding a final clause to the "Limits of Liability" section to the effect that "regardless of the number of persons insured, policies or self-insurance applicable, claims made, or insured motor vehicles to which this coverage applies, the company's liability for all no-fault benefits to or on behalf of any one eligible injured person who sustains accidental harm in any one motor vehicle accident shall be (a) $15,000 in the aggregate if the person dies as a result of the accident and (b) $15,000 in the aggregate otherwise. Subject to such aggregate limits: ..."; and (3) changing the additional no-fault coverage endorsement to indicate two separate aggregate limits under the "All No-fault Benefits" coverage designation
 
 
 [25]
 Because the personal representative of Yamaguchi's estate and the representative of the dependent survivors of Yamaguchi are identical, see supra note 3, we need not decide whether the estate or the dependent survivors of a fatally injured person are entitled to recover additional coverage no-fault benefits for "work loss" of a fatally injured insured person under Hawaii law and the terms of the State Farm policies. Cf. Mizoguchi v. State Farm Mutual Automobile Insurance Co., 663 P.2d 1071 (Haw. 1983) (no-fault benefit paid pursuant to Sec. 294-4(1)(B)--as opposed to Sec. 294-11(a)(3)--must be paid to legal representative of decedent for benefit of surviving spouse and any dependents, where spouse or dependents survive); Hudson v. Uwekoolani, 65 Haw. 468, 473, 653 P.2d 783, 787 (1982) (per curiam) (no-fault benefits paid pursuant to Sec. 294-4(1)(B)--as opposed to Sec. 294-11(a)(3)--must be paid to decedent's estate, where no spouse or dependents survive)