TRUSTEES FOR ALASKA, The Eskimo Walrus Commission and The Rural Alaska Resources Association, Petitioners,

v.

UNITED STATES DEPARTMENT OF INTERIOR; Manuel Lujan, Jr., Secretary U.S. Department of Interior, Respondents,

and

Shell Western E & P Inc., Intervenor–Respondent.

No. 90–70404.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 2, 1990.

Decided Nov. 26, 1990.

■■■■■■■■■■■■■■■

Sharon A. Sturges, Trustees of Alaska, Anchorage, Alaska, for petitioners.

John T. Stahr, Dept. of Justice, Environment and Natural Resources Div., Washington, D.C., for respondents.

E. Edward Bruce, Covington & Burling, Washington, D.C.; Timothy A. McKeever, Faulkner, Banfield, Doogan & Holmes, Anchorage, Alaska; Mark N. Savit, Jackson & Kelly, Washington, D.C., for intervenor-respondent.

Before GOODWIN, Chief Judge, BROWNING and RYMER, Circuit Judges.

RYMER, Circuit Judge:

Petitioners ("Trustees") sought unsuccessfully to have the Secretary of the Department of the Interior ["the Secretary"] either revoke his approval or require modification of an oil and gas exploration plan held by intervenor Shell Western Exploration and Production, Inc. ("SWEPI") for activities on the outer Continental Shelf in the Chukchi Sea, Alaska. Trustees now seeks review of the Secretary's denial directly in this court. Because their request is in effect for a revision or suspension of the plan and, under the statutory and regulatory scheme, jurisdiction to review the denial of such a request is vested in the district courts, we transfer this petition to the United States District Court for the District of Alaska.

I

The Outer Continental Shelf Lands Act [OCSLA] controls the leasing of sites on the Shelf. A lessee is required to obey federal laws on its leasehold. 43 U.S.C. § 1333(a)(1). One of the federal laws germane to offshore exploration is the Marine Mammal Protection Act [MMPA], which prohibits the "taking" of marine mammals. 16 U.S.C. §§ 1371–1377. "Taking" is defined liberally by the MMPA to include harassment. 16 U.S.C. § 1362(12).

SWEPI, an outer Continental Shelf lessee, obtained the Secretary's approval of an exploration plan for its leaseholds pursuant to the OCSLA. The plan involves drilling during the summer season, beginning when pack ice recedes northward, usually in early July, and ending when it returns to within a certain distance from the drilling site, usually in October. Pacific walruses travel with the receding and advancing edge of the pack ice.[1]

Trustees claims that SWEPI committed unlawful takings by harassing walruses during its 1989 drilling season. It contends that such takings are violations of the MMPA and that OCSLA lessees are not permitted to violate federal laws on their leaseholds. Claiming a likelihood of prospective walrus harassment in future drilling seasons, Trustees petitioned the Secretary to revoke SWEPI's exploration plan, or, in the alternative, to require SWEPI to change its plan to accommodate walrus migration.[2] The Secretary denied the petition on July 23, 1990.

II

A. The OCSLA's Jurisdictional Provisions

■ The OCSLA grants standing for citizen suits "to compel compliance" with the Act for "any alleged violation of any provision of [the Act] or any regulation promul-

---

1. Walruses are marine mammals. 50 C.F.R. § 18.3. They feed on benthic invertebrates, principally clams, which lie on the sea bottom and do not reproduce quickly. Hitching rides with the rapidly moving pack ice edge allows them to exploit a greater area of potential food supply. Affidavit of William F. Gussey, Agency Record Doc. 119.

2. Because SWEPI concluded its 1990 Chukchi Sea drilling season on October 11, Trustees has withdrawn the portion of its requested relief pertaining to suspending 1990 drilling. Trustees's remaining request that the Secretary be required to revise SWEPI's plan is not moot.

gated under [the Act], or of the terms of any permit or lease issued by the Secretary under [the Act]." 43 U.S.C. § 1349(a)(1). In such a suit, a court of appeals has original jurisdiction to review the Secretary's action where that action is "to approve, require modification of, or disapprove any exploration plan" under the Act. 43 U.S.C. § 1349(c)(2). If the agency action does not fit into those three categories but still arises from (1) "any operation ... which involves exploration" or (2) "the cancellation, suspension, or termination of a lease or permit," then the district courts have jurisdiction to review the agency action. 43 U.S.C. § 1349(b)(1).

B. The OCSLA's Exploration Plan Approval Process

The OCSLA requires lessees to submit an exploration plan for approval prior to commencing exploration. 43 U.S.C. § 1340(c)(1). The Secretary may approve a plan "as submitted or modified," or he may disapprove it. *Id.* If the lessee submits a subsequent "significant revision" of its already approved plan, the same approval process is required. 43 U.S.C. § 1340(e).

The exploration plan approval process, as federal regulations flesh it out, tracks the language of § 1349(c)(2). Within 30 days of the submission of a plan, the Secretary "shall" do one of three things:

(1) Approve the plan;

(2) Require the lessee to modify any plan which is inconsistent with the provisions of the lease, the [OCSLA], or the regulations prescribed under the [OCSLA] ...; or

(3) Disapprove the plan....

30 C.F.R. § 250.33(i). Thus, all in the context of the approval of a new (or "modified" but still unapproved) plan offered by a lessee, the Secretary must "approve," "require modification of," or "disapprove" the plan. The language in the regulations is therefore identical to the appellate court original jurisdiction grant in § 1349(c)(2).

C. The Secretary's Authority to Suspend or Revise an Existing Exploration Plan

Once an exploration plan has been approved, the Secretary has authority to suspend or revise it. The Secretary may suspend a plan for failure to comply with a provision of "any applicable law," 30 C.F.R. § 250.10(b)(1), or for conduct that threatens "serious, irreparable, or immediate harm or damage to ... the marine ... environment." 30 C.F.R. § 250.10(b)(2). Furthermore, the Secretary must conduct periodic reviews of activities being conducted under an approved exploration plan, and "[i]f the review indicates that the plan should be revised to meet the requirements of [C.F.R. Part 250, the Secretary] shall require the needed revision." 30 C.F.R. § 250.33(n)(1). Thus, the regulations the OCSLA authorizes contain the necessary authority for the Secretary to suspend a plan or require revision of it without such action being triggered by a submission of the lessee.

The OCSLA scheme regarding exploration plans, therefore, is broken down into two distinct parts: (1) initial approval of submitted plans and "modified" submitted plans, and (2) subsequent suspension and revision of already approved plans.

### III

Trustees seeks judicial review of the Secretary's denial of its petition directly in this court, relying on § 1349(c)(2) of the OCSLA. That section does not grant this court jurisdiction in this case. We hold that § 1349(c)(2) applies only to review of the process by which a lessee submits an exploration plan for initial approval or disapproval.

The identical wording of the three triggers for appellate court jurisdiction in § 1349(c)(2) and the three options available to the Secretary for action on a submitted plan in 30 C.F.R. § 250.33(i) indicates that the one flows from the other. Nowhere in the statute or its related regulations are the words "modify" or "modification" used in connection with a plan in any context other than the plan approval process, which the lessee initiates. In contrast, the regulations use "suspend" and "revise" only in the context of actions the Secretary may

take vis-a-vis an already approved plan.[3] The best reading of the statute, then, is that the separation of the words "approve" and "modify," which are used only in conjunction with initial approval, and the words "suspend" and "revise," which are only used in conjunction with subsequent action by the Secretary, is purposeful. *See Pennhurst State School & Hosp. v. Halderman*, 451 U.S. 1, 18, 101 S.Ct. 1531, 1540, 67 L.Ed.2d 694, 708 (1981) (must look to provisions of entire law when interpreting word in statute); *Yamaguchi v. State Farm Mutual Automobile Ins. Co.*, 706 F.2d 940, 948 n. 11 (9th Cir.1983) ("One provision of a comprehensive statute should be read in the context of the other provisions of that statute and in the light of the general legislative scheme").

The Secretary's rejection of Trustees's challenge cannot be considered an "approval" of a plan because SWEPI's plan had been approved and was already in place. SWEPI received original approval of its exploration plan on February 17, 1989. Challenges to the Secretary's approval of that original plan had to have been brought within 60 days. 43 U.S.C. § 1349(c)(3)(C). Here, Trustees petitioned the Secretary regarding SWEPI's exploration plan on July 6, 1990, long after the 60-day period for challenging the approval of a plan had expired.[4]

■ Trustees contends that the Secretary's denial of its petition to revoke or modify SWEPI's plan constituted a "ratification" of a prior approval, or a "re-approval" of the plan. We cannot agree. Under Trustees's logic, every agency action regarding an exploration plan could be couched in terms of approval and disapproval. One challenging an existing plan can always claim the Secretary is "re-approving" the plan whenever the challenge is unsuccessful, and, similarly, one whose plan the Secretary revises in response to a challenge can always claim that its plan is being "disapproved." Trustees's argument thus renders meaningless the special grant of original jurisdiction to review agency decisions in § 1349(c)(2); if that argument were to be accepted, all judicial review would be in the courts of appeals. If Congress had intended that result, it would have said so explicitly.

■ Neither may Trustees's challenge be considered a "request for modification." The OCSLA scheme uses "modification" only in connection with the initial plan approval process, which had long since passed in this case. Instead, Trustees's position should be characterized as a request for the Secretary to "suspend" or "revise" SWEPI's already existing plan, since those are the two options available to the Secretary for action regarding an already approved plan. *See* C.F.R. §§ 250.10 & 250.-33(n). A lessee "modifies" a proposed plan and "revises" an existing, approved plan. The Secretary requires "modification" of a deficient plan proposal but requires "revision" of an existing, approved plan. Since this case deals with an existing plan, rather than a plan proposal, the relevant Secretarial action sought is "revision," not "modification." ·

■ These distinctions in usage are not mere word play. Because the statute uses different words for different contexts, respecting those differences preserves the integrity of the statutory scheme. We agree that "[i]t is the effect of the action

---

**3.** When a lessee makes a "significant revision" to an already approved plan, the Secretary is to treat it as if it were a newly proposed plan. 43 U.S.C. § 1340(e). The use of "revision," as opposed to "modification," is consistent in that context as well. Unapproved plans can be "modified" before the Secretary approves them, while *existing* plans may undergo "significant revision," in which case they must be approved anew.

**4.** The legislative history supports the conclusion that § 1349(c)(2) is meant to apply only to the initial approval process. The House Report explains that "[r]eview of ... an exploration plan ... can be based on the written document itself," H.Rep. No. 95–590, 95th Cong., 2d Sess. 162 (1977), *reprinted in* 1978 U.S.Code Cong. & Admin. News 1450, 1568, suggesting that § 1349(c)(2) review contemplates looking to the content of the plan itself, rather than to subsequent events—*not* in the document—that might warrant suspension or revision of an existing plan.

and not its label that must be considered." *Abramowitz v. United States EPA,* 832 F.2d 1071, 1075 (9th Cir.1987). In this case, the essence of the Secretary's decision was to refuse to suspend or revise his prior approval of SWEPI's exploration plan. To label that refusal a "re-approval," or to consider a "revision" request to be a "modification" request, both of which Trustees urges, would be to elevate semantics over substance and to eviscerate the bifurcated jurisdictional scheme the OCS-LA creates.

## IV

We conclude that § 1349(c)(2) of the OCSLA does not vest this court with original jurisdiction to review an agency decision where that decision did not involve the exploration plan approval process. Trustees could have brought its petition to a district court, *see* 43 U.S.C. § 1349(b)(1), but because a court had never interpreted OSCLA's jurisdictional provisions, confusion was possible. Whenever a federal court finds that there is want of jurisdiction, it may, if it is in the interest of justice, transfer an action to a court in which the action could have been brought at the time it was filed. 28 U.S.C. § 1631. Such a transfer is warranted in this case, given the absence of a judicial interpretation of the relevant jurisdictional provision.

Because this court lacks original jurisdiction to hear this case, the petition of Trustees is ORDERED TRANSFERRED to the United States District Court for the District of Alaska.