DAVID HUDSON, Individually, and DAVID HUDSON, as Personal Representative of the Estate of MICHAEL HUDSON, deceased minor, and FRANCES HUDSON, Individually, Plaintiffs, *v.* BETTY UWEKOOLANI and HAWAIIAN GUARANTY COMPANY, LIMITED, a Hawaiian corporation, Defendants

NO. 7517

(CIVIL NO. 3842)

NOVEMBER 15, 1982

RICHARDSON, C.J., LUM, NAKAMURA, JJ., AND RETIRED JUSTICES OGATA AND MENOR ASSIGNED TEMPORARILY

*Per Curiam.* This is an interlocutory appeal from the denial of a motion for summary judgment.

On December 16, 1977, the plaintiffs' decedent, Michael Hudson, then eleven years of age, was riding a bicycle when he was struck by an automobile driven by defendant Betty Uwekoolani. Michael died as a result of his injuries. His parents filed a benefit application with defendant Hawaiian Insurance Guaranty Company, Limited ("HIG") which insured defendant Uwekoolani. HIG paid all medical and funeral expenses but declined to pay the parents' claim for other statutory no-fault benefits. Thereafter Michael's parents, David and Frances Hudson, individually, and Mr. Hudson as the personal representative of Michael's estate, filed suit against Mrs. Uwekoolani and HIG. HIG filed a motion for summary judgment

which was denied. The trial court, however, granted the insurance company leave to file an interlocutory appeal. The plaintiffs' claims against Mrs. Uwekoolani are not at issue on this appeal.

The additional no-fault benefits sought by the plaintiffs consisted of the loss of wages Michael might have earned but for his death. It is their theory that the decedent would eventually have been gainfully employed and had thus sustained a loss of earnings.

HIG argues that only where the deceased leaves a spouse or dependent surviving him will loss of earnings benefits be payable to his estate. The insurance company is relying upon HRS § 294-4(1)(B) which provides as follows:

> (B) In the case of death arising out of a motor vehicle accident of any person, including the owner, operator, occupant, or user of the insured motor vehicle, or any pedestrian (including a bicyclist) who sustains accidental harm as a result of the operation, maintenance, or use of said vehicle, the insurer shall pay, without regard to fault, to the legal representative of such person, *for the benefit of the surviving spouse and any dependent,* as defined in section 152 of the Internal Revenue Code of 1954, of such person, an amount equal to the no-fault benefits payable to such spouse and dependent as a result of the death of such person, subject, however, to the provisions of section 294-2(10).[1] [Emphasis added]

Section 152 of the *Internal Revenue Code* of 1954 (26 U.S.C. § 152) defines the term "dependent" as any one of a number of relatives of a taxpayer "over half of whose support, for the calendar year in which the taxable year of the taxpayer begins, was received from the taxpayer. . . ."

HIG then points out that Michael Hudson had no dependents at the time of his death; that he was unmarried and had no issue, legitimate or otherwise.

In response, the plaintiffs call this court's attention to the concluding language of the statute upon which HIG relies. HRS § 294-4(1)(B) concludes with the proviso: "subject, however, to the provisions of section 294-2(10)."

---

[1] In 1978, the legislature added a reference to the user or operator of a moped.

HRS § 294-2(10) in its entirety provides:

(10) "No-fault benefits" with respect to any accidental harm shall be subject to an aggregate limit of $15,000 per person *or his survivor* and means:

(A) All appropriate and reasonable expenses necessarily incurred for medical, hospital, surgical, professional nursing, dental, optometric, ambulance, prosthetic services, products and accommodations furnished, x-ray and may include any non-medical remedial care and treatment rendered in accordance with the teachings, faith or belief of any group which depends for healing upon spiritual means through prayer;

(B) All appropriate and reasonable expenses necessarily incurred for psychiatric, physical, and occupational therapy and rehabilitation;

(C) Monthly earnings loss measured by an amount equal to the lesser of:

(i) $800 per month, or

(ii) The monthly earnings for the period during which the accidental harm results in the inability to engage in available and appropriate gainful activity, or

(iii) A monthly amount equal to the amount, if any, by which the lesser of (i) and (ii) exceeds any lower monthly earnings of the person sustaining injury at the time he resumes gainful activity:

(D) All appropriate and reasonable expenses necessarily incurred as a result of such accidental harm, including, but, not limited to, (i) expenses incurred in obtaining services in substitution of those that the injured or deceased person would have performed for the benefit of himself or his family up to $800 per month, (ii) funeral expenses not to exceed $1,500, and (iii) attorney's fees and costs to the extent provided in section 294-30(a);

provided that the term, when applied to persons described in section 294-22(b)(2)(A), shall not include benefits under subparagraph (A), (B), and (C).[2] [Emphasis added]

---

[2] In 1977, the legislature amended paragraph 10(D) to read:

(D) All appropriate and reasonable expenses necessarily incurred as a result of such accidental harm, including, but not limited to, (i) expenses incurred in

The plaintiffs further point out that the no-fault statute expressly provides that "every person, insured under this chapter, *and his survivors*, suffering loss from accidental harm arising out of the operation, maintenance or use of a motor vehicle has a right to no-fault benefits." HRS § 294-3(a). (Emphasis added) No-fault benefits are those enumerated in HRS § 294-2(10) which also refers to the "person or his survivor" as the beneficiaries of those benefits.

Nowhere in the statute is the term "survivor" or "survivors" defined. Under the Hawaii wrongful death statute, however, survivors with standing to sue are the surviving spouse, children, father, mother, and any other person wholly or partly dependent upon the deceased person. HRS § 663-3. Damages for wrongful death, even in the case of an unemployed minor having no spouse or dependents, would include damages based on loss of future earnings. HRS § 663-8. Such damages would be recoverable by the minor's estate, and where he leaves no issue and surviving spouse, his parents would be the sole beneficiaries of his estate. HRS § 560:2-103.

HIG's argument is not without basis when the section of the statute upon which it relies is viewed in isolation from the rest of the statute. But when carried to its logical conclusion, the result would be the disallowance of all no-fault benefits where the person suffering accidental harm dies, leaving neither surviving spouse nor dependent. The medical reimbursement benefits provided under HRS § 294-2(10)(A), for example, would have to be disallowed, as would reimbursement for funeral expenses under HRS § 294-2(10)(D). The legislature could not have intended such unjust results. On the contrary, we think the legislature clearly intended that such expenditures would be recoverable either by the decedent's estate or by the survivors who incurred those expenditures. For that matter, HIG did reimburse the plaintiffs-parents for their medical and funeral expenditures.

---

obtaining services in substitution of those that the injured or deceased person would have performed not for income but for the benefit of himself or his family up to $800 per month, (ii) funeral expenses not to exceed $1,500, and (iii) attorney's fees and costs to the extent provided in section 294-30(a); provided that the term, when applied to a no-fault policy issued at no cost under the provisions of section 294-24(b)(2), shall not include benefits under subparagraphs (A), (B), and (C) for any person receiving public assistance benefits.

In 1980, the legislature deleted paragraph 10(C)(iii).

Had Michael Hudson been permanently incapacitated and continued to live, he would have been entitled to loss of earnings benefits under HRS § 294-2(10)(C), regardless of whether he had ever been employed. In the context of HRS § 294-2(10)(C), "monthly earnings" loss is, in part, defined to mean:

> In the case of an unemployed person or a person not regularly employed or self-employed, one-twelfth of the anticipated annual compensation before state and federal income taxes of such person paid *from the time such person would reasonably have been expected to be regularly employed.* [HRS § 294-2(7)(C).] [Emphasis added]

Moreover, the legislative history of the no-fault statute makes it clear that Michael would have been entitled to probable future earnings:

> Basic benefits would be paid to auto accident victims by insurers writing no-fault policies. All medical and rehabilitation costs would be paid by the insurer issuing the no-fault policy, up to the standard or maximum limit of every no-fault policy. In addition, all wage loss would be paid until such time as the injured person could resume available and appropriate gainful activity, up to the standard or maximum limit of every no-fault policy. . . . *Benefits would also be paid for loss of future anticipated earnings* or for impairment of earning capacity resulting from injuries sustained in an automobile accident, up to the standard or maximum limit of every no-fault policy. [1973 House Journal, Conf. Com. Rep. 13, at 1220.] [Emphasis added]

The legislature has thus demonstrated its intention that loss of earnings caused by death is a basic no-fault benefit that must be paid by the insurer under the statute. "The Hawaii State Legislature, in enacting the Hawaii no-fault law, clearly intended to provide reparations for loss of earnings caused by either non-fatal injury or death." *Yamaguchi v. State Farm Mutual Automotible Ins. Co.,* 515 F. Supp. 186, 190 (D. Haw. 1980).

We have already pointed out that the legislature could not have intended that such basic no-fault benefits as medical and funeral expenses would not be recoverable unless the deceased left a spouse or a dependent. Such benefits, we think, are always recoverable under the statute. And we can see no justifiable reason for a difference in treatment with respect to loss of earnings benefits. If the injured person was entitled to these benefits had he lived and been

permanently incapacitated, his estate should be entitled to receive these same benefits if he died. No-fault benefits are payable to persons suffering from accidental harm, *Wong v. Hawaiian Insurance Companies*, 64 Haw. 190, 637 P.2d 1144 (1981), and if they are not there to receive them, these benefits ought to be payable to their estates. Accordingly, we hold that where the deceased leaves neither surviving spouse nor dependent, then such loss of earnings benefits should be paid to his estate. As an asset to the decedent's estate, it would ordinarily be distributed in accordance with the laws of descent and distribution. *See* HRS § 560:2-103. The legislature, however, has seen fit to modify the method of distribution where no fault benefits are concerned. It has provided in HRS § 294-4(1)(B) that no-fault benefits shall be paid to the decedent's estate for the benefit of his surviving spouse and his dependents. But the legislature has never indicated that where there is no surviving spouse or dependent, the statutory no-fault benefits are no longer to be paid by the insurance company. It would, as we have intimated, be unreasonable and inconsistent to adopt that interpretation.

We think, therefore, that the plaintiffs are correct in their assessment that the language of § 294-4(1)(B) concerning the obligation to pay no-fault benefits to a legal representative of the decedent for the benefit of the surviving spouse and any dependents is merely language setting forth priority. Plaintiffs suggest that if the individual dies leaving a spouse and dependents, the no-fault benefits are to be paid to his personal representative for their benefit. And if there are both a spouse and dependents and other survivors, the priority goes to the spouse and his dependents. But if an individual dies leaving no spouse or dependent, the insurer's obligation is to pay the no-fault benefits to the legal representative of the estate to be distributed in accordance with the laws of descent and distribution. We agree. In this case, under HRS § 560:2-103, Michael's parents would be the beneficiaries of his estate.

We affirm the trial court's denial of HIG's motion for summary judgment and remand for further proceedings consistent with this opinion.

*George W. Playdon, Jr. (Davis, Playdon & Gerson,* of counsel) for defendants-appellants.

*Richard L. Rost* for plaintiffs-appellees.

### DISSENTING OPINION OF NAKAMURA, J.
### WITH WHOM RICHARDSON, C.J., JOINS

The issue in a nutshell is whether the parents of an eleven year old boy who was fatally injured in a collision between a bicycle and an automobile are his "dependents" for purposes of the no-fault insurance law. The court concludes they are, since they are his "survivors." But HRS § 294-4(1)(B) only obligates an insurer to make the payment in question "for the benefit of the surviving spouse and any dependent, as defined in section 152 of the Internal Revenue Code of 1954."[1] And as the parents concededly were not dependent on the child for support, I respectfully dissent.

### I.

Our concern here is not with general damages recoverable in tort; it is with the statutory benefits delineated in HRS § 294-2(10).[2]

---

[1] On December 16, 1977, when the fatal accident occurred, HRS § 294-4(1)(B) read:

Every no-fault and self-insurer shall provide no-fault benefits for accidental harm as follows:
(1) Except as otherwise provided in section 294-5(c):

. . . .

(B) In the case of death arising out of a motor vehicle accident of any person, including the owner, operator, occupant, or user of the insured motor vehicle, or any pedestrian (including a bicyclist) who sustains accidental harm as a result of the operation, maintenance, or use of said vehicle, the insurer shall pay, without regard to fault, to the legal representative of such person, for the benefit of the surviving spouse and any dependent, as defined in section 152 of the Internal Revenue Code of 1954, of such person, an amount equal to the no-fault benefits payable to such spouse and dependent as a result of the death of such person, subject, however, to the provisions of section 294-2(10).

[2] At the time of the accident, HRS § 294-2(10) read:
"No-fault benefits" with respect to any accidental harm shall be subject to an aggregate limit of $15,000 per person or his survivor and means:
(A) All appropriate and reasonable expenses necessarily incurred for medical, hospital, surgical, professional nursing, dental, optometric, ambulance, prosthetic services, products and accommodations furnished, x-ray and may include any non-medical remedial care and treatment rendered in accordance with the teachings, faith or belief of any group which depends for healing upon spiritual means through prayer;
(B) All appropriate and reasonable expenses necessarily incurred for

More particularly, we are dealing with no-fault benefits expressly designed to cover monthly earnings loss. The court reasons that had the victim "been permanently incapacitated and continued to live, he would have been entitled to work loss benefits under HRS § 294-2(10)(C)." It also claims to draw support for its conclusion from a statement in a legislative committee report that "[b]enefits would also be paid for loss of future anticipated earnings." Yet as HIG points out, neither rationale can explain away the statute's employment of dependency rather than survival as the pertinent criterion for benefit entitlement under HRS § 294-4(1)(B), a precondition rendered explicit by a reference to a section of the Internal Revenue Code.[3]

The court rejects HIG's thesis on grounds that the argument carried to a logical conclusion "would result in the disallowance of all no-fault benefits where the person suffering accidental harm dies as a result of his injuries leaving neither surviving spouse nor dependent." But HIG does not suggest that HRS § 294-2(10) is

---

psychiatric, physical, and occupational therapy and rehabilitation;

(C) Monthly earnings loss measured by an amount equal to the lesser of:

(i) $800 per month, or

(ii) The monthly earnings for the period during which the accidental harm results in the inability to engage in available and appropriate gainful activity, or

(iii) A monthly amount equal to the amount, if any, by which the lesser of (i) or (ii) exceeds any lower monthly earnings of the person sustaining injury at the time he resumes gainful activity.

(D) All appropriate and reasonable expenses necessarily incurred as a result of such accidental harm, including, but not limited to, (i) expenses incurred in obtaining services in substitution of those that the injured or deceased person would have performed not for income but for the benefit of himself or his family up to $800 per month, (ii) funeral expenses not to exceed $1,500, and (iii) attorney's fees and costs to the extent provided in section 294-30(a); provided that the term, when applied to a no-fault policy issued at no cost under the provisions of section 294-24(b)(2), shall not include benefits under subparagraphs (A), (B), and (C) for any person receiving public assistance benefits.

[3] A "dependent" within the meaning of the pertinent code provision is an individual who stands in a stated familial relationship with the taxpayer or who has as his principal place of abode the taxpayer's home and is a member of the taxpayer's household and has also received over half of his support for the taxable year from the taxpayer. See I.R.C. § 152 (1954).

There is no contention that the parents of the victim fell within the foregoing meaning of "dependent."

subject to such a reading. It has acknowledged liability for medical expenses payable under § 294-2(10)(A) and funeral expenses payable under § 294-2(10)(D). It merely asserts that in a death case, § 294-4(1)(B) only obligates an insurance carrier to make the payments described in § 294-2(10)(C) "for the benefit of the surviving spouse and any dependent." And where an accident victim leaves neither, HIG contends the statute contemplates no payment of benefits for monthly earnings loss, actual or otherwise.

## II.

HIG's interpretation of HRS § 294-4(1)(B) does not fly in the face of logic; nor does it carry an unjust result. Where medical services have been furnished the accident victim or where funeral expenses have been incurred, the payment thereof would be of primary benefit to the suppliers of those services. Damages to cover wages that might have been earned by the victim, however, would primarily benefit certain survivors of the victim. Moreover, HIG's view that the benefits in question are not claimable comports with the interpretation of HRS § 294-4(1)(B) by the state commissioner of motor vehicle insurance, who is charged with oversight of the scheme of reparations established by HRS chapter 294.

When the no-fault insurance system was adopted, tort liability with respect to accidental harm resulting from motor vehicle accidents was abolished, except where such accountability is preserved by HRS § 294-6. A situation in which liability has been kept intact is where death occurs. Thus the damages claimed here are collectible as they have been, by way of a tort action.

I would reverse the circuit court's denial of HIG's motion for summary judgment.