966 P.2d 1071

**The ESTATE OF George CABRAL, Claimant–Appellant,**

v.

**AIG HAWAII INSURANCE COMPANY and**

**Reynaldo Graulty, Insurance Commissioner, Department of Commerce and Consumer Affairs, State of Hawai'i,[1] Respondents–Appellees.**

**No. 20683**

Intermediate Court of Appeals of Hawai'i.

Feb. 11, 1998.

Certiorari Granted March 23, 1998.

---

1. Reynaldo Graulty (Graulty) succeeded Wayne C. Metcalf, III (Metcalf) as Insurance Commissioner, Department of Commerce and Consumer Affairs of the State of Hawai'i, during the pendency of this action. Pursuant to Hawai'i Rules of Appellate Procedure Rule 43(c)(1), Graulty has been substituted automatically for Metcalf in this case.

Christopher R. Evans, on the brief, Honolulu, for claimant-appellant.

Katharine M. Nohr, Reid, Richards & Miyagi, of counsel, on the brief, Honolulu, for respondent-appellee, AIG Hawaii Insurance Company.

David A. Webber, Deputy Attorney General, for respondent-appellee, State of Hawai'i (no brief filed).

Before WATANABE, ACOBA and KIRIMITSU, JJ.

KIRIMITSU, Judge.

## I. *INTRODUCTION*

After reviewing the legal arguments advanced on appeal, the dispositive issue in this case is whether Hawai'i Revised Statutes (HRS) §§ 431:10C–304 and 431:10C–103(10) (Spec. Pamph. 1987)[2] confers upon an insured a survivors' loss benefit equivalent to the aggregate limits of no-fault benefits less any no-fault benefits paid or payable under the policy. We hold that it does.

## II. *BACKGROUND*

On May 7, 1992, George Cabral (Cabral) was crossing the street when he was struck by an uninsured motor vehicle.[3] Cabral died shortly after the accident as a result of injuries sustained in the motor vehicle accident.

At the time of the accident, Cabral and his wife, Nora H. Cabral, lived with their daughter and son-in-law, Deborah and Lester Luahiwa (collectively, the Luahiwas). The Luahiwas had purchased no-fault automobile insurance from Respondent–Appellee AIG Hawaii Insurance Company (AIG). The no-fault automobile insurance policy (the policy) extended coverage to Cabral as a family member who resided with the Luahiwas.

Originally, the Luahiwas purchased the statutory minimum no-fault benefits of $15,000. Pursuant to the "No–Fault Benefits" section of the Luahiwa's Basic No–Fault Endorsement (the Endorsement), the policy covered the following no-fault benefits: (1) medical expenses; (2) rehabilitation expenses; (3) work loss; (4) substitute service expenses; (5) funeral expenses; (6) *survivors' loss;* (7) attorney's fees and costs; and (8) other appropriate and reasonable expenses.[4]

---

**2.** The controlling statutes in this case are the 1987 versions of sections 431:10C–304 and 431:10C–103(10) found in the Hawai'i Revised Statutes (HRS) 1987 Special Pamphlet. This is because, at the time of the relevant automobile accident on May 7, 1992, the 1987 versions of the statutes were in effect. The legislature amended parts of the Hawai'i motor vehicle insurance law in 1992, but such amendments did not become effective until after the date of the accident. *See* HRS § 431:10C–304 (Supp.1992) (effective date of amendment was January 1, 1993); 1992 Haw. Sess. L. Act 123, § 2 at 207–08, 210 (effective date of amendment June 3, 1992).

**3.** At the time of the accident, George Cabral (Cabral) was approximately 65 years old, retired, and unemployed. He was receiving $953.80 per month in social security payments as well as an unknown amount per month in pension or retirement benefits from "Pan Am."

**4.** The "No–Fault Benefits" section of the Basic No–Fault Endorsement (the Endorsement) states in its entirety:

Pursuant to the "Limits of Liability" section of the Endorsement, survivors' loss benefits were limited to the following:

Regardless of the number of persons insured, policies or self-insurance applicable, claims made or insured motor vehicles to which this coverage applies, the Company's liability for all No–Fault benefits to or on behalf of any one eligible injured person who sustains accidental harm in any one

#### NO–FAULT BENEFITS
No–Fault benefits shall consist of and be defined as:
(A) **Medical Expenses**—All appropriate and reasonable expenses necessarily incurred for medical, hospital, surgical, professional nursing, dental, optometric, ambulance, prosthetic services, products, and accommodations furnished, x-rays and includes any non-medical remedial care and treatment rendered in accordance with the teachings, faiths or beliefs of any group which depends for healing upon spiritual means through prayer.
(B) **Rehabilitation Expenses**—All appropriate and reasonable expenses necessarily incurred for psychiatric, physical and occupational therapy and rehabilitation.
(C) **Work Loss**—Loss of monthly earnings resulting from the inability of the eligible injured person to engage in available and appropriate gainful activity or a decrease in earning capacity because of accidental harm.
(D) **Substitute Service Expenses**—All appropriate and reasonable expenses necessarily incurred in obtaining services in substitution of those that the eligible injured person would have performed not for income but for the benefit of himself or his family, had he not sustained accidental harm.
(E) **Funeral Expenses**—All appropriate and reasonable expenses necessarily incurred for professional funeral services, including burial and cremation expenses.
(F) **Survivors' Loss**—No–Fault benefits payable as a result of the death of the eligible injured person for the benefit of dependent survivors. Such benefits may be paid immediately in a lump sum payment at the option of the beneficiary.
(G) **Attorney's Fees and Costs**—A reasonable sum for attorney's fees based upon actual time expended which shall be treated separately from such claim and be paid directly by the Company to the attorney and costs of settlement or suit, necessary to effect payment of any or all No–Fault benefits found due under this coverage, unless a court determines that the claim was fraudulent, excessive or frivolous.
(H) **Other Appropriate and Reasonable Expenses**—necessarily [sic] incurred as a result of accidental harm.

motor vehicle accident shall be $15,000 in the aggregate. Subject to such aggregate limit:

. . . .

(D) *The maximum amount payable for survivors' loss is $15,000 reduced by the amount of any other No–Fault benefits paid or payable under this coverage.*[5]

A No–Fault policy issued to certified public assistance recipients at no cost under the Hawaii [Hawai'i] Joint Underwriting Plan shall not include benefits under subparagraphs (A), (B), (C) for any person receiving public assistance benefits.
(Internal emphases omitted.)

5. The "Limits of Liability" section of the Endorsement states in its entirety as follows:
#### LIMITS OF LIABILITY
Regardless of the number of persons insured, policies or self-insurance applicable, claims made or insured motor vehicles to which this coverage applies, the Company's liability for all No–Fault benefits to or on behalf of any one eligible injured person who sustains accidental harm in any one motor vehicle accident shall be $15,000 in the aggregate. Subject to such aggregate limit:
(A) The maximum amount payable for work loss shall not exceed the lesser of
(i) $900 per month plus any optional additional insurance which may be applicable; or
(ii) In the event the period during which the loss of earnings is incurred or the initial or terminal portion thereof is shorter than a calendar month, the ratio of the number of working days in the period or portion therein to the number of regular days of work in the calendar month of which it is a part, multiplied by the monthly earnings applicable to the period during which the accidental harm results in the inability of the eligible injured person to engage in available and appropriate gainful activity.
Monthly earnings loss benefits shall be reduced by any income from substitute work performed by the eligible injured person or by income the injured person would have earned in available appropriate substitute work the injured person was capable of performing but unreasonably failed to undertake.
(B) The maximum amount payable for substitute service expenses shall not exceed $800 per month.
(C) The maximum amount payable for funeral expenses shall not exceed $1,500.
(D) *The maximum amount payable for survivors' loss is $15,000 reduced by the amount of any other No–Fault benefits paid or payable under this coverage.*

(Emphasis added) (internal emphases omitted).

However, at some point prior to the accident, the Luahiwas purchased optional additional coverage that increased the total aggregate no-fault benefits limit from $15,000 to $50,000. This increase was reflected in the Additional No-Fault Coverage Endorsement that modified the Basic No-Fault Endorsement as follows:

### ADDITIONAL NO-FAULT COVERAGE ENDORSEMENT

#### (HAWAII)

It is agreed that the Basic No-Fault Endorsement (Hawaii) is amended as follows:

SCHEDULE

| | |
|---|---|
| A.  All No-Fault Benefits | Total Aggregate Limit $50,000 |
| B.  Work Loss | Maximum Monthly Limit $ 1,200 |

1. *With respect to any amounts payable under the Basic No-Fault Endorsement (Hawaii) because of accidental harm sustained by an eligible injured person the introductory paragraph of the Limits of Liability provision is amended by substituting the amount set forth opposite A in the Schedule for the amount of "$15,000";*

2. With respect to any amounts payable under the Basic No-Fault Endorsement (Hawaii) because of accidental harm sustained by an eligible injured person who is a named insured or relative, paragraph (A)(i) of the Limits of Liability provision is amended by substituting the amount set forth opposite B in the Schedule for the amount of "$900";

3. Additional no-fault coverage does not apply to accidental harm sustained by any person while occupying or while a pedestrian through being struck by a motor vehicle, owned by such person and with respect to which additional no-fault coverage has not been provided during the policy period;

4. Exclusion (D) of the Basic No-Fault Endorsement (Hawaii) does not apply to Additional No-Fault Coverage;

5. This endorsement is subject to all the terms and provisions of the Basic No-Fault Endorsement (Hawaii) not expressly modified herein[.]

(Emphasis added) (internal emphases omitted).

As a result of Cabral's death, Nora H. Cabral, as Special Administratrix of the Claimant-Appellant Estate of George Cabral (Claimant), sought to recover no-fault benefits under the terms of the policy. Based on its interpretation of the policy, AIG paid Claimant $3,844.22 in medical expenses, $1,500 in funeral expenses, and $15,000 in survivors' loss benefits.

Claimant disagreed with the amount of benefits paid by AIG and, therefore, requested an administrative hearing with the Insurance Commissioner (the Commissioner), pursuant to HRS § 431:10C-212(a) (1993).[6] Specifically, Claimant argued that, when the policy limits were amended to reflect an increase from $15,000 to $50,000, it also amended the amount of survivors' loss benefits payable under the policy. As such, instead of the policy reading, "The maximum amount payable for survivors' loss is $15,000 reduced by the amount of any other No-Fault benefits paid or payable under this

---

6. **§ 431:10C-212 Administrative hearing on insurer's denial of claim.** (a) If a claimant or provider of services objects to the denial of benefits by an insurer or self-insurer pursuant to section 431:10C-304(3)(B) and desires an administrative hearing thereupon, the claimant or provider of services shall file [such request] with the commissioner, within sixty days after the date of denial of the claim[.]
HRS § 431:10C-212(a) (1993).

coverage[,]" it should be amended to read, "The maximum amount payable for survivors' loss is *$50,000* reduced by the amount of any other No–Fault benefits paid or payable under this coverage."

The Hearings Officer disagreed with Claimant and determined that when the aggregate limits of the no-fault benefits were increased from $15,000 to $50,000, the increase did not change that part of the policy relating to survivors' loss benefits.[7] On February 27, 1996, the Hearings Officer issued Findings of Fact, Conclusions of Law, and recommended Order, that provided in pertinent part:

> It is also worth noting that in addition to the "loss of earnings" issue as framed on the face of the denial, the Claimant sought to expand this issue by incorporating arguments relating to "survivor's loss" [sic] (death benefits). In examining this approach it became apparent, however, that: 1) the statutes and rules are relatively silent on the subject of "survivor's loss"; 2) the Claimant's theory of attempting to include such benefits within "loss of earnings" is not convincing; and *3) the amount of "survivor's loss" payable to any particular claimant as a separate category of no-fault benefits is a contractual matter determined by the terms of his or her insurance policy.* In the present matter, although the aggregate coverage under the applicable policy had been increased from $15,000.00 to $50,000.00, this increase did not modify the pre-existing limit which had been specifically set at $15,000.00 for survivor's loss benefits (nor for that matter did it effect [sic] the pre-existing limits for loss of earnings by other eligible injured persons, substitute services, or funeral expenses). *While it is uncontested that insurance policies must conform to all applicable provisions of the Hawaii [Hawai'i] motor vehicle insurance law, the evidence in this matter does not reflect any conflict between the applicable law and the applicable policy provisions.*

> . . . .

> The Hearings Officer recommends that based upon the above findings of fact and conclusions of law, the Insurance Commissioner find and conclude that the Claimant has not sustained his burden of proof to establish that [AIG's] denial of no-fault benefits was improper, and further recommends that each of the parties bear their own attorney's fees and costs incurred in pursuing this matter.

(Emphases added.)

The Commissioner filed a Final Order on May 15, 1996 that adopted the Hearings Officer's Findings of Fact, Conclusions of Law, and recommended Order as the Commissioner's Final Order.

Claimant appealed the Commissioner's Final Order to the First Circuit Court. On April 28, 1997, the circuit court entered its order denying Claimant's appeal.[8] Claimant timely filed her notice of appeal on May 6, 1997.

## III. *STANDARD OF REVIEW*

Review of a decision made by the circuit court upon its review of an agency's decision is a secondary appeal. The standard of review is one in which this court must determine whether the circuit court was right or wrong in its decision, applying the standards set forth in HRS § 91–14(g) to the agency's decision. This court's review is further qualified by the principle that the agency's decision carries a presumption of validity and appellant has the heavy burden of making a convincing showing that the decision is invalid because it is unjust and unreasonable in its consequences.

*Bragg v. State Farm Mut. Auto. Ins. Co.,* 81 Hawai'i 302, 304, 916 P.2d 1203, 1205 (1996) (quoting *University of Hawai'i Professional*

---

7. Claimant–Appellant Estate of George Cabral (Claimant) also argued an entitlement to work loss benefits. The Hearings Officer found that Claimant was not entitled to work-loss benefits, and Claimant does not appeal that part of the decision.

8. Specifically, the circuit court made the following relevant conclusion of law:

> 2. This increase of the aggregate no-fault benefits coverage under the policy did not modify the pre-existing limit of the survivors' loss benefits of $15,000.

*Assembly v. Tomasu,* 79 Hawai'i 154, 157, 900 P.2d 161, 164 (1995)).

HRS § 91–14(g) (1993) provides:

Upon review of the record the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:

(1) In violation of constitutional or statutory provisions; or

(2) In excess of the statutory authority or jurisdiction of the agency; or

(3) Made upon unlawful procedure; or

(4) Affected by other error of law; or

(5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or

(6) Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

HRS § 91–14(g).

Under HRS § 91–14(g), conclusions of law are reviewable under subsections (1), (2), and (4); questions regarding procedural defects are reviewable under subsection (3); findings of fact are reviewable under subsection (5); and an agency's exercise of discretion is reviewable under subsection (6).

*Bragg,* 81 Hawai'i at 305, 916 P.2d at 1206 (citation omitted).

The sole issue on appeal is a question of law that is freely reviewable by this court: Whether the Hawai'i motor vehicle insurance law, specifically HRS §§ 431:10C–304 and 431:10C–103(10), confers upon an insured a survivors' loss benefit in an amount equal to the aggregate limits of no-fault benefits less any no-fault benefits paid or payable under the policy. *Id.*

9. The Hawai'i motor vehicle insurance law is codified in chapter 431, article 10C of the HRS, HRS § 431:10C–101, and is intended to effectu-

## IV. DISCUSSION

We are faced with a dispute over the amount payable as a survivors' loss benefit. Claimant is arguing that, pursuant to the Hawai'i motor vehicle insurance law (HMVIL),[9] she is entitled to survivors' loss benefits in an amount equal to the aggregate limits of the expanded limits of no-fault benefits less any no-fault benefits paid or payable under the policy. AIG argues that, pursuant to Hawai'i Administrative Rules (HAR) § 16–23–11 (1990), Claimant is entitled to only $15,000 in survivors' loss benefits. Based on the following, we agree with Claimant.

### A. *Definition of Survivors' Loss Benefits*

A survivors' loss benefit is defined in the "No–Fault Benefits" section of the Endorsement as follows:

(F) **Survivors' Loss**—No–Fault benefits payable as a result of the death of the eligible injured person for the benefit of dependent survivors. Such benefits may be paid immediately in a lump sum payment at the option of the beneficiary.

(Internal emphases omitted.) This language is consistent with the Ninth Circuit's description of survivors' loss benefits as "a discrete type of no-fault benefits payable under [an insurance policy] to compensate the dependent survivors of the eligible insured person for 'appropriate and reasonable expenses necessarily incurred as a result of accidental harm,' separate and distinct from other losses compensable under the other categories of benefits." *Yamaguchi v. State Farm Mut. Auto. Ins. Co.,* 706 F.2d 940, 954 (9th Cir. 1983) (interpreting language identical to the insurance policy in the immediate case).

### B. *The Creation of Survivors' Loss Benefits in Hawai'i*

■ In order to determine the amount of survivors' loss benefits due under the policy, we must first identify the origins of an insured's entitlement to survivors' loss benefits. The Hearings Officer determined that

ate the system of motor vehicle insurance in Hawai'i. HRS §§ 431:10C–101, 431:10C–102(b) (Spec.Pamph.1987).

survivors' loss benefits were contractual in nature because the statutes and rules were silent on the subject of survivors' loss benefits. We disagree.

Instead, the proper starting point is the HMVIL, which is the body of law intended by the legislature to govern the business of motor vehicle insurance in Hawai'i. HRS §§ 431:1–101 and 431:10C–102.[10]

At first glance, the HMVIL does not specifically create a survivors' loss benefit because it defines no-fault benefits as follows:

§ 431:10C–103 **Definitions.** As used in this article:

. . . .

(10)(A) No-fault benefits, sometimes referred to as personal injury protection benefits, with respect to any accidental harm means:

(i) [Medical Expenses.] All appropriate and reasonable expenses necessarily incurred for medical, hospital, surgical, professional nursing, dental, optometric, ambulance, prosthetic services, its products and accommodations furnished, and x-ray. The foregoing expenses may include any nonmedical remedial care and treatment rendered in accordance with the teachings, faith, or belief of any group which depends for healing upon spiritual means through prayer;

(ii) [Rehabilitation Expenses.] All appropriate and reasonable expenses necessarily incurred for psychiatric, physical, and occupational therapy and rehabilitation;

(iii)[Work Loss.] Monthly earnings loss measured by an amount equal to the lesser of:

(I) $900 a month; or

(II) The monthly earnings for the period during which the accidental harm results in the inability to engage in available and appropriate gainful activity.

(iv) [Substitute Services Expenses.] All appropriate and reasonable expenses necessarily incurred as a result of such accidental harm, including, but not limited to:

(I) Expenses incurred in obtaining services in substitution of those that the injured or deceased person would have performed not for income but for the benefit of the person or the person's family up to $800 a month;

(II) [Funeral Expenses.] Funeral expenses not to exceed $1,500; and

(III) [Attorneys' Fees and Costs.] Attorney's fees and costs to the extent provided in section 431:10C–208(a);

Provided that the term, when applied to a no-fault policy issued at no cost under the provisions of section 431:10C–422(2)(B), shall not include benefits under items (i), (ii) and (iii) for any person receiving public assistance benefits.

(B) No-fault benefits shall be subject to:

(i) An aggregate limit of $15,000 per person or such person's survivor where each applicable policy provides only the basic no-fault coverage; or

(ii) An aggregate limit of the expanded limits where the insured has contracted for it under an optional additional coverage.

HRS § 431:10C–103(10).

Nevertheless, even though a survivors' loss benefit is not specifically listed as a no-fault benefit under HRS § 431:10C–103(10)(A), we believe it is created out of the language set forth in HRS § 431:10C–304:

§ 431:10C–304 **Obligation to pay no-fault benefits.** Every no-fault and self-insurer shall provide no-fault benefits for accidental harm as follows:

---

10. Furthermore, the insurance policy states in the "Basic No–Fault Coverage" provision of the *Endorsement*:

The Company will pay, in accordance with the Hawaii [Hawai'i] No–Fault Law, No–Fault benefits on account of accidental harm sustained by an eligible injured person and caused by an accident arising out of the operation, *maintenance, or use of a motor vehicle as a vehicle.*

(Emphases omitted.)

(1) Except as otherwise provided in section 431:10C–305(d): [11]

  (A) In the case of injury arising out of a motor vehicle accident, the insurer shall pay, without regard to fault, to the following persons who sustain accidental harm as a result of the operation, maintenance or use of the vehicle, an amount equal to the no-fault benefits payable to that person as a result of the injury:

    (i) Any person, including the owner, operator, occupant, or user of the insured motor vehicle;

    (ii) Any pedestrian (including a bicyclist); or

    (iii) Any user or operator of a moped as defined in section 249–1; or

  (B) *In the case of death of any person* listed in item (1)(A), arising out of a motor vehicle accident, *the insurer shall pay, without regard to fault, to the legal representatives of such person* who sustains accidental harm as a result of the operation, maintenance or use of the vehicle, for the benefit of the surviving spouse and any dependent, as defined in section 152 of the Internal Revenue Code of 1954,[12] as amended, *an amount equal to the no-fault benefits payable to the spouse and dependent as a result of the death of such person, subject to the provisions of section 431:10C–103(10);*

Provided that [subparagraphs] (A) and (B) shall not apply in the case of injury to or death of any operator of a motorcycle or motor scooter as defined in section 286–2 arising out of a motor vehicle accident.

(2) Payment of no-fault benefits shall be made as the benefits accrue, except that in the case of death, payment of the benefits may be made immediately in a lump sum payment, at the option of the beneficiary.

HRS § 431:10C–304(1), (2) (brackets in original) (emphases and footnotes added).

More specifically, we believe a survivors' loss benefit is created out of that part of HRS § 431:10C–304(1)(B) which requires that in the event of death, an insurer shall pay to the insured's survivor "an amount equal to the no-fault benefits ..., subject to the provisions of section 431:10C–103(10)." This reasoning is based upon sound principles of statutory construction.

[I]t is a cardinal rule of statutory construction that courts are bound, if rational and practicable, to give effect to all parts of a statute, and that no clause, sentence, or word shall be construed as superfluous, void, or insignificant if a construction can legitimately be found which will give force to and preserve all the words of the statute.

*Dines v. Pacific Ins. Co., Ltd.,* 78 Hawai'i 325, 331, 893 P.2d 176, 182, *reconsideration denied,* 78 Hawai'i 474, 896 P.2d 930 (1995) (citations omitted).

[I]t is also true that, even when strictly construing a statute, our primary duty in interpreting and applying statutes is to ascertain and give effect to the legislature's intention to the fullest degree. Although the intention of the legislature is to be obtained primarily from the language of the statute itself, we have rejected an approach to statutory construction which limits us to the words of a statute, for when aid to construction of the meaning of words, as used in the statute, is available, there certainly can be no rule of law which forbids its use, however clear the words may appear on superficial examination. Thus, the plain language rule of statutory construction, does not preclude an examination of sources other than the language

---

**11.** HRS § 431:10C–305(d) (Spec.Pamph.1987) provides that the following persons are not eligible to receive payment of no-fault benefits:

  (1) Occupants of a motor vehicle other than the insured motor vehicle;

  (2) Operator or user of a motor vehicle engaging in criminal conduct which causes any loss; or

  (3) Operator of a motorcycle or motor scooter as defined in section 286–2.

HRS § 431:10C–305(d).

**12.** Section 152 of the Internal Revenue Code (the Code) is that part of the Code that defines "dependent."

of the statute itself even when the language appears clear upon perfunctory review.

*Bragg,* 81 Hawai'i at 306, 916 P.2d at 1207 (citation omitted).

As for the particular issue *sub judice,* there is no legislative history or other outside sources that indicate the legislature's intent on the existence or amount of survivors' loss benefits. The only source of the legislature's intent is found in the plain language of the statute itself. Thus, we abide by the well-established rule that "where the language of the law in question is plain and unambiguous, construction by [the] court is inappropriate and [the court's] duty is only to give effect to the law according to its plain and obvious meaning." *Strouss v. Simmons,* 66 Haw. 32, 50, 657 P.2d 1004, 1016 (1982) (citations, quotation marks, and brackets omitted).

Accordingly, we ask ourselves whether the language of HRS § 431:10C–304(1)(B) is clear and unambiguous. We believe that it is.

> Pursuant to the relevant language of subsection (B): In the case of death of any person ..., the insurer shall pay, without regard to fault, to the legal representatives of such person ... *an amount equal to the no-fault benefits payable to the spouse and dependent as a result of the death of such person, subject to the provisions of section 431:10C–103(10).*

HRS § 431:10C–304(1)(B) (emphasis added). We interpret this language to mean that an insurer incurs an obligation to pay no-fault benefits upon death. Because a survivors' loss benefit is an insurer's obligation that is incurred "as a result of the death of the eligible insured person," we believe the language of HRS § 431:10C–304(1)(B) clearly illustrates the legislature's intent to create a statutory right to survivors' loss benefits. As such, we hold that HRS § 431:10C–304(1)(B) creates a statutory right to survivors' loss benefits.[13]

## C. *Amount of Survivors' Loss Benefits*

Given our holding that HRS § 431:10C–304(1)(B) creates a statutory right to survivors' loss benefits, we must now determine the amount of survivors' loss benefits that is required under the HMVIL. Once again, we must engage the principles of statutory construction.

As stated earlier, the relevant language of HRS § 431:10C–304(1)(B) is as follows:

> In the case of death of any person ..., the insurer shall pay, without regard to fault, to the legal representatives of such person ... *an amount equal to the no-fault benefits payable to the spouse and dependent as a result of the death of such person, subject to the provisions of section 431:10C–103(10).*

(Emphasis added.)

Thus, we must discern what the legislature intended the language "an amount equal to the no-fault benefits payable to the spouse ..., subject to the provisions of section 431:10C–103(10)," HRS § 431:10C–103(10), to mean. For that we look to section 103(10).

Section 103(10) is divided into two parts ((A) and (B)). Part (A) defines the following no-fault benefits: (1) medical expenses; (2) rehabilitation expenses; (3) work loss; (4) substitute services expenses; (5) funeral expenses; and (6) attorney's fees and costs. Thus, pursuant to part (A), an insurer is obligated to pay to the survivor those no-fault benefits that are payable as medical, rehabilitation, work loss, substitute services, funeral, or attorney's fees and costs expenses.

Part (B) also defines no-fault benefits as the following:

> No-fault benefits shall be subject to:
>
> (i) An aggregate limit of $15,000 per person or such person's survivor where each applicable policy provides *only* the basic no-fault coverage; or

---

13. Our holding is consistent with the Hawai'i Supreme Court's holding in *Hudson v. Uwekoolani,* 65 Haw. 468, 653 P.2d 783 (1982). In *Hudson,* the court held that "where a deceased leaves neither surviving spouse nor dependent, then such loss of earnings benefit should be paid to his estate." 65 Haw. at 473, 653 P.2d at 787. However, in its holding the court also implicitly acknowledged that the language of HRS § 294–4(1)(B), which is identical for all intents and purposes to HRS § 431:10C–304(1)(B), creates a death benefit payable to a "survivor." *Id.*

(ii) *An aggregate limit of the expanded limits where the insured has contracted for it under an optional additional coverage.*

HRS § 431:10C–103(10)(B) (emphases added).

■ The express language of part (B)(i) provides for a maximum payment of $15,000 to the person's survivor where *only* the basic no-fault coverage was purchased. The express language of part (B)(ii) provides for the payment of the "expanded limits where the insured has contracted for it under an optional additional coverage." According to the express language of HRS § 431:10C–304(1)(B), survivors' loss benefits are equal to the amount of no-fault benefits set forth in HRS § 431:10C–103(10). Therefore, pursuant to HRS §§ 431:10C–304(1)(B) and 431:10C–103(10)(B), we hold that upon the death of an insured, the insurer is obligated to provide the insured's survivor a survivor's loss benefit of up to either (1) $15,000 where the insured has purchased only the basic no-fault coverage, or (2) the expanded limits of no-fault benefits where the insured has contracted for it under an optional additional coverage.

■ To be sure, the most a survivor can receive under the statute is either (1) $15,000 where the insured has purchased only the basic no-fault coverage, or (2) the expanded limits of no-fault benefits where the insured has contracted for it under an optional additional coverage.[14] Thus, we further hold that to the extent that an insured is entitled to survivors' loss benefits, the statute requires that the survivors' loss benefits be reduced by any no-fault benefits paid or payable pursuant to HRS § 431:10C–103(10)(A).[15]

In this case, Claimant purchased, vis-a-vis the Luahiwas, optional additional coverage that expanded the no-fault benefits limit from $15,000 to $50,000. As such, Claimant is entitled to the aggregate limits of the expanded limits of no-fault benefits (i.e., $50,000), less any no-fault benefits paid or payable (i.e., $3,844.22 in medical expenses and $1,500 in funeral expenses). Thus, Claimant is entitled to a total of $44,655.78 in survivors' loss benefits.[16]

### HAR § 16–23–11

■ AIG argues that HAR § 16–23–11 governs the amount of benefits payable under the HMVIL. The rule states in relevant part as follows:

§ 16–23–11 *Required optional additional coverage.* Each insurer shall offer to each policyholder or applicant for a no-fault policy *the optional coverage as well as the basic no-fault coverage, with the applicable premiums therefor, as set forth in the exhibit entitled "Required Optional Additional Coverage,"* dated September 1, 1990, located at the end of this chapter, which is made a part of this section.

HAR § 16–23–11 (emphasis added).

The Exhibit entitled "Required Optional Additional Coverage" (Exhibit) states in relevant part as follows:

**EXHIBIT**

---

**14.** HRS § 431:10C–304(B) states that the no-fault benefits are *subject to* the aggregate limit of either $15,000 or the aggregate limit of the expanded limits.

**15.** Our holding does not disrupt the holdings of *Mizoguchi v. State Farm Mut. Auto. Ins. Co.,* 66 Haw. 373, 663 P.2d 1071 (1983) and *Hudson v. Uwekoolani,* 65 Haw. 468, 653 P.2d 783 (1982), because the issue in the immediate case was not addressed by either the *Mizoguchi* or *Hudson* court.

In *Mizoguchi,* the dispositive issue was whether a surviving spouse was entitled to payment of survivors' loss benefits and provable work loss benefits, up to increased aggregate limits of additional no-fault coverage. *Mizoguchi,* 66 Haw. at 378, 663 P.2d at 1074–75.

In *Hudson,* the dispositive issue was whether the parents or the estate of an unemployed deceased minor was entitled to no-fault benefits, including future wage losses that the deceased minor would have earned. *Hudson,* 65 Haw. at 472, 653 P.2d at 786.

In the immediate case, the dispositive question is whether survivors' loss benefits are statutorily created, and if so, in what amount.

**16.** In this case, Claimant already received $15,000 as survivors' loss benefits. Thus, Claimant is only entitled to an additional $29,655.78 as survivors' loss benefits.

|  | | Required Additional Options | | |
| COVERAGE DESIGNATION | BASIC | Option 1 | Option 2 | Option 3 | Option 4 |
| **NO–FAULT BENEFITS COVERAGE PACKAGE** | | | | | |
| Aggregate limit | $15,000 | $30,000 | $50,000 | $75,000 | $100,000 |
| Medical & rehabilitation | subj. to agg. limit | subj. to agg. limit | subj. to agg. limit | subj. to agg. limit | subj. to agg. limit |
| Loss of earnings-(max./mo.) | | | | | |
| Named insured and relative | $ 900 | $ 1,000 | $ 1,200 | $ 1,500 | $ 2,000 |
| Other eligible injured person | $ 900 | $ 900 | $ 900 | $ 900 | $ 900 |
| Substitute services (max./mo.) | $ 800 | $ 800 | $ 800 | $ 800 | $ 800 |
| Funeral expense | $ 1,500 | $ 1,500 | $ 1,500 | $ 1,500 | $ 1,500 |
| Survivor's benefits | $15,000 | $15,000 | $15,000 | $15,000 | $ 15,000 |
| Premium | $_____ | $_____ | $_____ | $_____ | $_____ |

AIG argues that pursuant to Option 2 of the Exhibit, Claimant is entitled to only $15,000 in survivors' loss benefits, $1,500 in funeral expenses and $3,844.22 in medical expenses. We disagree with the applicability of HAR § 16–23–11.

Section 16–23–11 states that "[e]ach insurer shall offer to each policy holder ... the optional coverage as well as the basic no-fault coverage, *with the applicable premiums therefore, as set forth in the exhibit entitled 'Required Optional Additional Coverage[.]'*" HAR 16–23–11 (emphasis added). Thus, by the express terms of the rule, the Exhibit governs only the amount of *premiums* charged by an insurer. It does not govern the determination of the amount of *benefits* due an insured or an insured's survivor. Thus, to the extent that the Exhibit sets forth the amount of benefits payable under various no-fault benefit limits, it is only applicable as an exhibit of those factors considered by the Commissioner in setting the premiums for insurance policies. Accordingly, AIG's reliance on HAR § 16–23–11 is misplaced.[17]

### D. *Effect Upon the Policy*

[L]iability insurers have the same rights as individuals to limit their liability, and to impose whatever conditions they please on their obligation, provided they are not in contravention of statutory inhibitions or public policy.

... [I]nsurance policies are governed by statutory requirements in force and effect at the time such policies are written. Such provisions are read into each policy issued thereunder and become a part of the contract with full binding effect upon each party. Consequently, when the terms of an insurance contract are in conflict with statutory language, the statute must take precedence over the terms of the contract.

*Dawes v. First Ins. Co. of Hawai'i, Ltd.*, 77 Hawai'i 117, 121–22, 883 P.2d 38, 42–43, *reconsideration denied*, 77 Hawai'i 489, 889 P.2d 66 (1994) (citations, brackets, and ellipsis omitted).

17. Furthermore, Hawai'i Administrative Rule § 16–23–11 is entitled "Required optional additional coverage." This rule would be relevant to its statutory counterpart found in HRS § 431:10C–302 (Spec.Pamph.1987) entitled "Required optional additional insurance." To be sure, HRS 431:10C–302 does not help us in our determination of survivors' loss benefits.

Thus, to the extent that the Luahi-was' automobile insurance policy is in conflict with our interpretation of HRS §§ 431:10C–304(1)(B) and 431:10C–103(10), the statute takes precedence over the terms of the contract.

## V. CONCLUSION

In conclusion, we hold that HRS § 431:10C–304(1)(B) creates a statutory right to survivors' loss benefits. We also hold that HRS §§ 431:10C–304(1)(B) and 431:10C–103(10), when read together, provide for survivors' loss benefits in an amount equal to either (1) the statutory minimum no-fault benefit where the insured has only purchased the statutory minimum no-fault benefit, or (2) the aggregate limits of the extended no-fault limits where the insured has purchased optional additional coverage, *less* any no-fault benefits payable as no-fault benefits under HRS § 431:10C–103(10)(A).

Based on the foregoing reasons, the circuit court's affirmance of the Commissioner's Final Order is vacated, and the case is remanded with instructions that the Commissioner shall enter an order holding that Claimant is entitled to receive survivors' loss benefits in the amount of $50,000, less $3,844.22 in medical expenses, less $1,500 in funeral expenses, and credit for the $15,000 in survivors' loss benefits already paid.